RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0201p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

PARVEEN SINGH (04-4352) and AMANDEEP SINGH (04-4353),

*Petitioners,*

Nos. 04-4352/4353

*v.*

ALBERTO R. GONZALES, Attorney General,

*Respondent.*

On Review of a Decision of the
Board of Immigration Appeals.
Nos. A43 927 846; A43 927 847

Argued: March 16, 2006

Decided and Filed: June 21, 2006

Before: DAUGHTREY and GILMAN, Circuit Judges; RUSSELL, District Judge.[*]

## COUNSEL

**ARGUED:** Scott E. Bratton, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Petitioners. William C. Peachey, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Margaret W. Wong, MARGARET WONG & ASSOCIATES, Cleveland, Ohio, for Petitioners. William C. Peachey, Ethan B. Kanter, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

## OPINION

RONALD LEE GILMAN, Circuit Judge. Parveen Singh and her daughter Amandeep, who are both natives and citizens of India, petition for review of a decision by the Board of Immigration Appeals (BIA) that denied their requests for discretionary relief and ordered them removed from the United States. The BIA affirmed the decision of the immigration judge (IJ), who (1) found Parveen removable because she had entered the United States on a visa procured through fraud, (2) imputed the fraudulent conduct of Parveen and her husband to their then five-year-old daughter Amandeep, and (3) denied Parveen and Amandeep any form of discretionary relief.

_____

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1

In their petition for review, the Singhs argue that the BIA erred in denying them a hearing at which they could develop the factual basis for their request for a discretionary waiver and in imputing to Amandeep the fraudulent conduct of her parents. Because we conclude that the BIA's decision to impute to Amandeep the fraudulent conduct of her parents is an unreasonable interpretation of the Immigration and Nationality Act (INA), we **GRANT** Amandeep's petition for review in order to set aside her removal on the basis of fraud and **REMAND** her case to the BIA for a formal determination of whether she is removable as an alien who entered the United States without valid documentation. On the other hand, we **DISMISS** both Parveen's and Amandeep's challenges to the denial of discretionary relief because we lack jurisdiction to review the Attorney General's decision regarding such requests.

## I.  BACKGROUND

### A.    Factual background

Surrinder Singh, the husband of Parveen and the father of Amandeep, entered the United States in 1989 under a visa in the name of his deceased cousin, Lal Singh. Lal had passed away in 1988 shortly before appearing at the United States Embassy in India to receive his immigration visa. Surrinder fraudulently assumed the identity of his deceased cousin and secured a visa that allowed him to enter the United States.

Following Surrinder's admission into the United States, Surrinder obtained a divorce from Parveen . They remarried in India shortly thereafter, with Surrinder assuming the name of Lal Singh. The purpose of this second marriage was to obtain admission to the United States for Parveen and Amandeep as the spouse and daughter, respectively, of a lawful permanent resident (LPR). Parveen later admitted that she was aware of her husband's plan to secure a visa for her and for Amandeep, and that the three Singhs had entered the country "on false pretenses." While residing in the United States in 1994, the Singhs had a second child, Amaninder, who is a United States citizen and not a part of these proceedings.

### B.    Procedural background

The government initiated removal proceedings against Parveen and Amandeep in June of 2001, asserting that both of them were removable under § 237(a)(1)(A) of the Immigration and Nationality Act (INA), which is codified at 8 U.S.C. § 1227(a)(1). That provision allows aliens to be removed who were inadmissible at the time of their entry into the United States under other provisions of the INA, including the one establishing that aliens who obtained their immigrant visas or admission "by fraud or by willfully misrepresenting a material fact" are inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i). (Proceedings against Surrinder Singh are being handled separately by the government.)

In February of 2002, Parveen filed applications for adjustment of status, cancellation of removal, and a waiver of excludability. The IJ addressed Parveen's applications at a removal hearing held in May of 2003. At the hearing, counsel for the Singhs conceded that they were ineligible for cancellation of removal and adjustment of status, and also withdrew their request for permission to depart the United States voluntarily. The IJ issued her decision at the conclusion of the hearing, finding that Parveen and Amandeep were removable and that they were ineligible for all the forms of relief that they had requested. As to the Singhs' request for a discretionary waiver, the IJ stated in her oral opinion:

> . . . [T]he Court would further note that given [the] chain of fraud and deception in
> which these parties have engaged for at least 10 years, if not more, that it is time to

call a halt to this play which is being enacted in this courtroom and the Court would deny as a matter of discretion any applications having to do with discretionary relief.

The IJ then ordered the Singhs removed to India.

Parveen and Amandeep appealed the IJ's decision to the BIA, arguing that (1) they were both statutorily eligible for a discretionary waiver under § 237(a)(1)(H) of the INA and that the case should be remanded for further consideration of their entitlement to such a waiver, and (2) the government had not met its burden of proving that Amandeep was inadmissible due to her parents' fraud.  The BIA, in a per curiam opinion, affirmed the IJ's rulings on all aspects of the Singhs' request for relief and dismissed the appeal.  Relying on the Ninth Circuit's decision in *Senica v. INS*, 16 F.3d 1013 (9th Cir. 1994), and its own decision in *Matter of Aurelio*, 19 I & N Dec. 458 (BIA 1987), the BIA "reject[ed] the argument that the parents' fraudulent entry cannot be imputed to their minor daughter, because the intent of the custodial parents has long been imputed to minor children in immigration proceedings."  The BIA also "decline[d] to disturb the Immigration Judge's finding that [Parveen and Amandeep] are unworthy of a discretionary waiver under section 237(a)(1)(H)."  This timely petition for review of the BIA's decision followed.

## II. ANALYSIS

### A.        The BIA's decision to impute to Amandeep the fraudulent conduct of her parents is an unreasonable interpretation of the INA

Before delving into the governing statutes and caselaw, we pause briefly to highlight what is at stake in the present case.  The key issue, simply put, is whether Amandeep Singh will be permanently barred from readmission to the United States because of imputed fraud.  Amandeep was charged as an alien who secured her admission via fraud or willful misrepresentation.  *See* 8 U.S.C. § 1182(a)(6)(C)(i).  In upholding that charge, the IJ and the BIA have imputed to Amandeep the admittedly fraudulent conduct of her parents, even though that conduct occurred when Amandeep was only five years old.  As a result, Amandeep is deemed removable and, as an alien deported on the basis of fraud, is likely to be forever barred from residing lawfully in the United States, even on a student visa.  *See* 8 U.S.C. § 1182(i)(1) (allowing the Attorney General to exercise discretion in waiving inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(i) *only* if the applicant is the spouse, son, or daughter of a U.S. citizen or a LPR).  Amandeep is not the "spouse, son or daughter" of a U.S. citizen or a LPR, and the discretionary waiver under § 1182(i)(1) is therefore unavailable to her.

This consequence could have been avoided had the Department of Homeland Security charged Amandeep under § 212(a)(7)(A)(i) of the INA, which declares inadmissible any immigrant who is not in possession of valid documentation as required by the immigration laws  *See* 8 U.S.C. § 1182(a)(7)(A)(i).  Had she been charged under the latter section, Amandeep would be eligible for a waiver under § 212(k) of the INA, a provision that does not require a qualifying relative.  *See id.* § 1182(k) (allowing the Attorney General to admit aliens inadmissible under § 1182(a)(7)(A)(i) in certain instances).  With the practical concerns underlying the present case in mind, we turn now to our legal analysis.

### 1.        *Standard of review*

Two distinct standards govern our review of removal decisions by the BIA.  We generally review questions of law de novo, but "defer to the BIA's reasonable interpretations of the INA." *See Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005).  On the other hand, the factual findings of the IJ are reviewed under the substantial-evidence standard, and we will not reverse those findings "unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B); *see also Hanna v. Gonzales*, 128 F. App'x 478, 480 (6th Cir. 2005) (unpublished)

(applying this standard in reviewing an IJ's decision that ordered the petitioner to be removed for making a fraudulent misrepresentation in an adjustment-of-status application).

The first question of law before us is whether the BIA's decision to impute the fraudulent conduct of Amandeep's parents to Amandeep is a reasonable interpretation of the INA. In deciding this question, we accord the BIA's interpretation of the statute deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999) (holding that the BIA's "construction of the statute [that] it administers" is entitled to *Chevron* deference) (citation and quotation marks omitted). But our review of the BIA's decision, although "deferential toward [the] agency," is not "a rubber stamp." *See Reed v. Reno*, 146 F.3d 392, 39 (6th Cir. 1998) (citation and quotation marks omitted).

The *Chevron* two-step process requires the court to ask "whether the statute is silent or ambiguous with respect to the specific issue before it; if so, the question for the court [is] whether the agency's answer is based on a permissible construction of the statute." *Aguirre-Aguirre*, 526 U.S. at 424 (citation and quotation marks omitted). In the immigration context, moreover, "the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'" *Id.* at 425 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 448-49 (1987)).

### 2.   *Congress did not directly speak to the elements needed to prove fraudulent entry under the INA*

In their brief before this court, the Singhs argue that the BIA's decision to impute the fraudulent conduct of parents to their minor children is invalid at both the first and the second steps of the *Chevron* inquiry. They maintain that (1) the BIA's interpretation of §§ 212(a)(6)(C)(i) and 237(a)(1)(A) of the INA (which are codified at 8 U.S.C. §§ 1182(a)(6)(C)(i) and 1227(a)(1)(A)) is not entitled to *Chevron* deference because Congress spoke directly to the issue of fraud and willful misrepresentation in securing admission to the United States, and (2) even if deference is owed, the BIA's construction of the relevant statutory provisions is unreasonable.

Contrary to the Singhs' argument, Congress did not directly address the elements required to prove fraud or willful misrepresentation when it established that aliens who secure admission into the United States using these disapproved methods have not been lawfully admitted. *See* 8 U.S.C. §§ 1182(a)(6)(C)(i), 1227(a)(1)(A)). The first of these INA provisions states that aliens "who, by fraud or willfully misrepresenting a material fact, . . . procure . . . a visa, other documentation, or admission into the United States . . . [are] inadmissible." *Id.* § 1182(a)(6)(C)(i). Section 1227(a)(1)(A) then declares that aliens who were inadmissible because of fraud or willful misrepresentations are removable from the United States. Neither of these provisions refers to the elements or the quantum of proof needed to establish fraud or willful misrepresentation, and the Singhs have not pointed to any other provision of the INA that specifically controls this question.

Instead, as the Singhs acknowledge, the absence of congressional guidance prompted the BIA and the courts to set forth elements that the government must prove when it seeks to remove or deny admission to aliens on the basis of fraud or willful misrepresentation. When the BIA adopted "the commonly accepted legal sense" of fraud, for example, it began by observing that "[t]he term 'fraud' is not defined by the [INA]." *See Matter of G-G-*, 7 I & N Dec. 161, 164 (BIA 1956) (holding that fraud consists "of false representations of a material fact made with knowledge of its falsity and with intent to deceive the other party"); *see also Forbes v. INS*, 48 F.3d 439, 441-42 (9th Cir. 1995) (holding that the BIA must prove fraud by showing with "clear, unequivocal, and convincing evidence that [the alien] procured his visa by willful misrepresentation of a material fact"). The definition of fraud employed by the BIA thus constitutes a gloss on the statute developed "through a process of case-by-case adjudication." *Cardoza-Fonseca*, 480 U.S. at 448-49; *see also*

*Chevron*, 467 U.S. at 843 (explaining that the reviewing court should proceed to the second step of the inquiry "if the statute is silent or ambiguous with respect to the specific issue").

Therefore, when the Singhs argue that the BIA's decision to impute the fraudulent acts of parents to their minor children violates "the plain language of the statute," what they are actually claiming is that the BIA's imputation rule is inconsistent with its own definition of fraud, which requires that aliens both know that their representations were false and specifically intend to deceive the government. *See Matter of G-G-*, 7 I & N Dec. at 164 (setting forth the elements required to prove fraud). This argument, however, does not demonstrate that Congress spoke directly either to the level of knowledge required to prove fraud or, more precisely, to whether traditional elements of fraud such as knowledge of falsity and intent to deceive can be imputed to a third party. We therefore conclude that the BIA's interpretation of the statutory scheme survives the first part of the *Chevron* two-step inquiry.

### 3.      Imputation of fraudulent conduct is an unreasonable extension of caselaw imputing intent to abandon or knowledge of ineligibility

At the second step of the *Chevron* analysis, we must ask whether the BIA's interpretation of the immigration statutes "is based on a permissible construction of th[ose] statute[s]." *Aguirre-Aguirre*, 526 U.S. at 424 (quoting *Chevron*, 467 U.S. at 843). We will defer to the BIA's interpretation of the statutes that it administers so long as that interpretation is "reasonable." *See Patel*, 432 F.3d at 692. In addressing whether the BIA's decision to impute to Amandeep the fraudulent conduct of her parents is a reasonable interpretation of the INA, both parties have focused on the Ninth Circuit's decision in *Senica v. INS*, 16 F.3d 1013, 1015-16 (9th Cir. 1994). We will therefore discuss the factual and legal background of the *Senica* case in some detail.

The petitioners in *Senica* were a mother (Maria) and her three minor children, all of whom were natives of Mexico. 16 F.3d at 1014. Maria's husband, Rodrigo, had obtained admission into the United States on the basis of being the unmarried child of a LPR, even though he was in fact married to Maria at the time. *Id.* Because the basis for his admission was false at the time that he entered, Rodrigo was never a bona fide LPR. *Id.* Eight years after Rodrigo entered the country, Maria and the children followed him. They gained admission as the spouse and children, respectively, of a LPR. Maria later conceded, however, that she knew at the time of her admission that Rodrigo had not been lawfully admitted and that she and her children were therefore ineligible for admission on the basis of his LPR status. *Id.*

The government initiated removal proceedings against the Senicas, alleging that they had secured admission to the United States by fraud or willful misrepresentation. *Id.* Rodrigo died during the proceedings, and Maria conceded that she and her children were removable. *Id.* She sought on their behalf, however, a discretionary waiver that applies to immigrants who did not know that they were ineligible for admission and who could not have discovered that ineligibility by exercising "reasonable diligence." *Senica*, 16 F.3d at 1014. Notably, the government "did not pursue the fraud or willful misrepresentation charges as to the children." *Id.* at 1014. Maria also applied for relief under a predecessor of the current INA § 237(a)(1)(H)(i)(I), a provision that permits the Attorney General to waive removal where the applicant is the parent of a LPR. *Id.* at 1014-15. An IJ granted the Senica children's request for relief and, because they then qualified as LPRs, also granted Maria's derivative application for a waiver as the mother of three LPR children. *Id.* at 1015.

On appeal, the BIA reversed. The BIA first observed that the children's eligibility turned on whether they could have discovered their father's fraudulent conduct through the exercise of "reasonable diligence." *Id.* That question, the Board held, should be answered with reference to what Maria knew before entering the United States. *Id.* Relying on Board precedents holding that

the parents' knowledge or state of mind could be imputed to their minor children, the BIA imputed Maria's knowledge that she was ineligible for admission to her minor children.  It then denied the children's request for a discretionary waiver.  *Id.*  Maria's derivative request for relief was also denied because of the absence of a qualifying relative.

The Ninth Circuit denied the Senicas' petition for review.  *Senica*, 16 F.3d at 1016.  In doing so, the court emphasized two factors, the first jurisprudential and the second practical.  The first was that, in imputing Maria's knowledge to her minor children, the BIA had followed a line of its precedents in which it had "imputed a parent's knowledge or state of mind to a child."  *Id.* at 1015 (citing *Matter of Aurelio*, 19 I & N Dec. 458 (BIA 1987), and *Matter of Zamora*, 17 I & N Dec. 395 (BIA 1980)).  In the court's view, the decision of the BIA to impute the mother's knowledge of ineligibility to her children "was not a departure from its previous practice of imputing a parent's state of mind, or failure to reasonably investigate, to an unemancipated minor."  *Senica*, 16 F.3d at 1016.  The court then explained in a parenthetical that "great deference is given to an agency's construction of its enabling statute in order to preserve consistency."  *Id.* (citing *United States v. Clark*, 454 U.S. 555, 565 (1982)).

The Ninth Circuit also emphasized the practical problem—what it called "the illogical consequences"—that the BIA's imputation rule sought to avoid.  Concretely, a rule under which the parents' knowledge could not be imputed to their minor children might encourage parents to file fraudulent applications on their behalf.  The children, because they could not be charged with the required state of mind, would then be eligible for a waiver and, if one were obtained, would make the offending parent derivatively eligible for discretionary relief.  "Such games," the court warned, "are not to be played within the confines of the immigration laws."  *Id.*

We agree with the Singhs that *Senica* is distinguishable in material ways from the present case.  The most important distinction, already mentioned above, is that the government in *Senica* did not seek to remove the Senica children by imputing their parents' fraudulent conduct to them.  *Senica*, 16 F.3d at 1014.  Instead, the issue in *Senica* was whether the children were eligible for a discretionary waiver under INA § 212(k), for which they could qualify only by convincing the Attorney General that their "exclusion was not known to, and could not have been ascertained by [them through] the exercise of reasonable diligence" before they entered the United States.  *See id.* at 1014 n.2 (quoting 8 U.S.C. § 1182(k)(1988)).  Because the children had conceded their removability "on the basis of entry without valid documents," *id.* at 1014, the only issue before the Ninth Circuit was whether the BIA had been correct "in imputing a parent's *knowledge* to a child in considering whether the child had *knowledge* of her ineligibility for admission to the United States."  *Id.* at 1015 (emphasis added).

That is *not* the issue before us in the present case.  Instead, the government seeks to remove Amandeep on the basis of her parents' fraudulent conduct despite her concession (like the children in *Senica*) that she is removable under § 212(a)(7)(A)(i) of the INA because she did not possess valid documentation when she entered the United States.  *See* 8 U.S.C. § 1182(a)(7)(A)(i).  We believe, however, that imputing fraudulent conduct—which necessarily includes both *knowledge* of falsity and an *intent to deceive*, *see Matter of G-G-*, 7 I & N Dec. at 164—is a far cry from imputing knowledge of ineligibility for admission, which is the only type of imputation specifically endorsed by the Ninth Circuit in *Senica*.  Contrary to the government's view, therefore, *Senica* is not directly on point as to the outcome of the present case.

Our reading of *Senica* is also consistent with the way that the Ninth Circuit itself has interpreted that decision in the later case of *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1021 (9th Cir. 2005).  One of the issues in *Cuevas-Gaspar* was whether the length of time that lawfully admitted parents had resided in the United States could be imputed to their then-minor child, thus satisfying the requirement that the applicant have resided continuously in the United States for seven

years to be eligible for cancellation of removal.  The Ninth Circuit answered that question in the affirmative, relying in part on its decision in *Senica*.  That decision, the court said, "imputed a parent's knowledge or state of mind to the parent's minor children with respect to grounds for inadmissibility."  *Id.* at 1024-25; *see also id.* at 1025 ("We concluded [in *Senica*] that the BIA was correct in imputing the parent's knowledge of ineligibility for admission to the children.").  *Senica* therefore stands only for the proposition that the BIA did not act unreasonably in imputing a mother's knowledge that she was ineligible for admission to the United States to her minor children.

We find the BIA's reliance on *Matter of Zamora*, 17 I & N Dec. 395 (BIA 1980), and *Matter of Aurelio*, 19 I & N Dec. 458 (BIA 1987), to be equally misplaced.  Zamora was a Mexican citizen whose family had resided lawfully in the United States before his father's serious illness prompted the family to return to Mexico.  He attempted to reenter the United States nine years after his family had left the country.  *Id.* at 395-96.  Affirming the decision to exclude Zamora, the BIA held that "the intent of the parents *with regard to the departure* (i.e., whether or not they, the parents, intend to abandon their resident status) is imputed to the accompanying child . . . ."  *Id.* at 397 (emphasis added).

We do not read *Zamora* as announcing a general rule that all kinds of intent can be imputed from a parent to a child.  And with good reason:  imputing the intent to engage in a perfectly lawful act—such as leaving the United States to return to one's native country—is far different from imputing the intent to commit fraud.  Fraudulent conduct carries heightened moral and legal culpability and is sanctioned both civilly (as an intentional tort) and criminally (by state and federal laws).  These strong civil and criminal sanctions, in turn, require proof of an intent to deceive.  *See Pence v. United States*, 316 U.S. 332, 338 (1942) (defining fraud to include "the intent to deceive"); *see also Matter of G-G-*, 7 I & N Dec. at 164 (adopting the "intent to deceive" element).  This is precisely the type of intent that the BIA seeks to impute to Amandeep in the present case.

As a general matter, however, not even a parent's *negligence* is typically imputed to a minor child.  *See International Union, United Auto., Aerospace and Agr. Implement Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 213-14 (1991) (White, J., concurring in part and concurring in the judgment) (reciting the "general rule" that "parents' negligence will not be imputed to the[ir] children").  Imputing fraud is even further beyond the pale, as is evidenced by the inability of either the BIA or the Attorney General to cite a single decision of the courts or an administrative agency that supports this type of imputation.  We therefore cannot uphold as "reasonable" the BIA's decision, rendered without explanation, to extend its precedents imputing the lawful intent to abandon residency status to cover the markedly different imputation of an intent to deceive.

The Board's decision in *Matter of Aurelio*, 19 I. & N. Dec. at 459, likewise provides little support for the imputation decision in the present case.  In *Aurelio*, the named appellant was a Filipino immigrant who had obtained a visa for herself, her husband, and her son based on her father's United States citizenship.  *Id.*  Her right to a visa was extinguished, however, when her father died approximately one year before the visa issued.  As aliens who had sought entry without valid documentation, the Aurelios were deemed removable.  They sought waivers under § 212(k) of the INA.  The BIA affirmed the IJ's decision to deny the waivers, holding that the IJ had correctly determined that the appellant "should have ascertained in the exercise of reasonable diligence the impact of her father's death on her eligibility for an immigrant visa."  *Id.* at 462.  "Reasonable diligence," the Board ruled, included understanding the legal significance of the father's death even though, as "people living in remote Philippine villages," the Aurelios otherwise had no knowledge of the United States' immigration laws.  *Id.* at 463.

The BIA did not once mention in its opinion in *Aurelio* that the appellant's knowledge of her ineligibility for a visa had been imputed to her son.  As the Ninth Circuit later explained, "the Board

did not address the status of the son separately from that of his mother, thereby at least *impliedly* imputing her failure to investigate to him[.]"   *Senica*, 16 F.3d at 1016 (emphasis added).  This implicit articulation of an imputation rule might have provided some support for the BIA's subsequent decision to impute knowledge of ineligibility in *Senica*, but it does not control in the present case.  As we read *Aurelio*, therefore, the only possible imputation was of the appellant's "failure to investigate" her continued eligibility for the visa, *see id.*, or of her presumed knowledge of the relevant American immigration laws.  *Aurelio* simply does not speak to the factual setting before us.  The BIA's decision in the present case, far from constituting an application of well-settled precedent, is thus a marked extension of the principles underlying cases that are both factually and legally distinguishable.

Rather than flowing naturally from its prior precedents, the BIA's decision to impute fraudulent conduct to Amandeep is in tension with the normally stringent scrutiny to which the BIA subjects allegations of fraud that potentially lead to a permanent bar from admission into the United States.  *See Matter of Y-G-*, 20 I. & N. Dec. 794, 797 (BIA 1994) (holding that the BIA would "'closely scrutinize' the factual basis for a possible finding of excludability under [§ 212(a)(6)(C)(i) of the INA], since such a finding may perpetually bar the applicant from admission") (quoting *Matter of Shirdel*, 19 I. & N. Dec. 33, 35 (BIA 1984) (announcing the same level of scrutiny under a precursor to that provision)).  "Close[] scrutin[y]" of the allegations against Amandeep's parents would undoubtedly establish that they committed fraudulent acts in securing admission to the United States and are therefore subject to a permanent bar.  In contrast, the decision to remove Amandeep on the basis of acts that she herself did not commit—and by implication, on the basis of knowledge and intent that she did not have—cannot withstand the close scrutiny that the BIA's own precedents demand.

The government also defends the BIA's decision on the strength of the policy concerns articulated by the Ninth Circuit in *Senica*.  As explained above, the *Senica* court was concerned that a holding contrary to the one reached by the BIA would provide aliens with an incentive to file fraudulent applications for admission on behalf of their children.  The court reasoned that "the parents would become *at least derivatively eligible* to remain in the United States by pointing out that the children were innocent of the parents' fraud."  16 F.3d at 1016 (emphasis added).  We find the application of that reasoning to the present case unconvincing for two reasons.

First, the Ninth Circuit failed to note the key distinction between becoming technically *eligible* for discretionary relief and actually *receiving* the requested relief.  Section 212(k) of the INA, the provision at issue in *Senica* and the one that would apply to Amandeep in the absence of the imputed fraud, makes plain that the decision to admit an otherwise inadmissible alien lies squarely "in the discretion of the Attorney General."  8 U.S.C. § 1182(k).  In our view, parents who submit fraudulent documents in the hope of securing admission through their children would not be strong candidates for a favorable exercise of the Attorney General's discretion.  We therefore find the Ninth Circuit's concern over widespread manipulation of the application process to be exaggerated.

The second reason that we decline to apply *Senica*'s rationale here is that the BIA's decision in the present case leads to consequences just as "illogical," if not more so, than those identified by the *Senica* court.  *See* 16 F.3d at 1016.  Specifically, because the Singhs' second child is a United States citizen, they are already *eligible* for a waiver under § 237(a)(1)(H) of the INA, which provides discretionary relief for a "spouse, parent, son, or daughter of a citizen of the United States . . . ."  8 U.S.C. § 1227(a)(1)(H).  But Amandeep does not have a qualifying relative, and therefore remains *ineligible* for relief under that provision.  In other words, Amandeep could be permanently barred from readmission to the United States at the same time that her parents—the perpetrators of the fraudulent acts in the first place—would retain the possibility of securing discretionary relief.  This scenario, in which the person innocent of the fraudulent conduct suffers consequences more severe

than those who actually committed the fraud, strikes us as not only "illogical," but downright unfair. We therefore do not believe that the policy concerns identified by the Ninth Circuit save the BIA's otherwise unreasonable decision to impute the fraudulent conduct of Amandeep's parents to Amandeep herself.

To sum up, we conclude that the BIA's history of imputing parents' knowledge of their ineligibility for admission or their intent to abandon LPR status to their minor children does not establish a reasonable basis for imputing fraudulent conduct to those children. Accordingly, we grant Amandeep Singh's petition for review insofar as it challenges her removability under § 212(a)(6)(C)(i) of the INA, and remand her case to the BIA for a formal determination of removability under § 212(a)(7)(A)(i). *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam) (holding that the proper course in immigration proceedings is generally to remand the matter to the BIA "for additional investigation or explanation") (citation and quotation marks omitted). The BIA, in making this determination, of course remains free to accept Amandeep's concession that she is removable because she was inadmissible at the time of entry.

**B.      This court lacks jurisdiction to review the BIA's refusal to exercise its discretion in favor of the Singhs**

The remaining issue in this case is whether we have jurisdiction over the Singhs' challenges to the refusal of the Attorney General to grant them discretionary relief. Specifically, § 242(a)(2)(B)(ii) of the INA, codified at 8 U.S.C. § 1252(a)(2)(B)(ii), deprives courts of appeals of "jurisdiction to review . . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified [under Title II of the INA] to be in the discretion of the Attorney General or the Secretary of Homeland Security."

The question then becomes whether the waiver sought by the Singhs is of the type described in this statutory section. Parveen and Amandeep sought relief from removal under § 237(a)(1)(H), a provision within Title II of the INA. That provision commits to the Attorney General the discretionary decision of whether to waive removal despite the fact that the alien was "inadmissible" under the immigration laws at the time of entry into the United States. 8 U.S.C. § 1227(a)(1)(H) ("The provisions of this paragraph relating to the removal of aliens within the United States on the ground that they were inadmissible at the time of admission as aliens . . . may, *in the discretion of the Attorney General*, be waived . . . ."). (Emphasis added.)

The Ninth Circuit appears to be the only court of appeals that has addressed the question of whether discretionary-waiver decisions under § 237(a)(1)(H) are reviewable. *See San Pedro v. Ashcroft*, 395 F.3d 1156, 1157-58 (9th Cir. 2005). In *San Pedro*, the petitioner, a native of the Phillipines, conceded that he was removable, but requested cancellation of removal and a waiver under § 237(a)(1)(H). *Id.* at 1157. The IJ first held that San Pedro was statutorily ineligible for the waiver because he did not possess an immigrant visa or an equivalent document, which is "a threshold requirement" under the statute. *Id.* In an alternative holding, the IJ assumed San Pedro's eligibility, but concluded that he "did not merit a favorable exercise of discretion" because "the unfavorable factors in the record outweigh the favorable." *Id.* San Pedro then filed a petition for review of the IJ's decision that denied him the discretionary waiver.

The Ninth Circuit distinguished between two types of decisions that the immigration courts make when faced with waiver requests under § 237(a)(1)(H). First, the immigration courts must decide whether the alien has satisfied the statutory prerequisites—that is, whether the alien is *statutorily* eligible for relief. Because such eligibility is a legal question that does not involve the exercise of executive discretion, the Ninth Circuit held that it had jurisdiction to review adverse determinations of statutory eligibility. *San Pedro*, 395 F.3d at 1157.

The second type of decision arises only after an alien has established his or her statutory eligibility.  In such cases, "the ultimate authority whether to grant [the waiver] rests entirely in the discretion of the Attorney General."  *Id.* (citation omitted) (alteration in original).  This purely discretionary decision, unlike the determination of statutory eligibility, cannot be reviewed by the courts of appeals.  *Id.* at 1157-58 ("[W]e have jurisdiction only to review the statutory eligibility elements under § 237(a)(1)(H) and lack jurisdiction to review discretionary denial of the waiver."); *see also Alop v. Ashcroft*, 121 F. App'x 248, 249 (9th Cir. 2005) (unpublished) (following *San Pedro* and holding that it lacked jurisdiction over a petition to review the BIA's denial of a discretionary waiver under § 237(a)(1)(H)).

We are persuaded by the analytical framework set forth by the Ninth Circuit in *San Pedro*, and will adopt and apply it in the present case.  Under that framework, we lack jurisdiction to review the denial by the BIA of the Singhs' request for a § 237(a)(1)(H) waiver.  Specifically, neither the IJ nor the BIA questioned that Parveen and Amandeep were statutorily eligible for relief under § 237(a)(1)(H).  The IJ instead ruled, and the BIA agreed, that the Singhs had engaged in a "chain of fraud and deception" and were therefore not worthy of the favorable exercise of discretion.  This decision embodies the kind of "pure" discretion, "unguided by legal standards," that Congress has expressly precluded aliens from challenging in a petition for review.  *See San Pedro*, 395 F.3d at 1157 (citation omitted).  We therefore dismiss, for lack of jurisdiction, both Parveen's petition for review and that portion of Amandeep's petition that challenges the denial of a discretionary waiver from removal.

### III.  CONCLUSION

For all of the reasons set forth above, we **GRANT** Amandeep's petition for review in order to set aside her removal on the basis of fraud and **REMAND** her case to the BIA for a formal determination of whether she is removable as an alien who entered the United States without valid documentation.  We also **DISMISS** both Parveen's and Amandeep's challenges to the denial of discretionary relief because we lack jurisdiction to review the Attorney General's decision regarding such requests.