**NOT RECOMMENDED FOR PUBLICATION**

File Name: 21a0020n.06

Case No. 20-3377

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ELMER NEFTALI PORTILLO-SOLIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFFREY A. ROSEN, Acting Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

> **FILED**
> Jan 11, 2021
> DEBORAH S. HUNT, Clerk

BEFORE: **SUHRHEINRICH, CLAY, and DONALD, Circuit Judges.**

**BERNICE B. DONALD, Circuit Judge.** Elmer Neftali Portillo-Solis seeks review of an order by the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because Portillo-Solis has failed to meet his burden of proof for each claim, we **DENY** his petition.

## I. BACKGROUND

Elmer Neftali Portillo-Solis is a native and citizen of El Salvador. He is married to Dilcia Arely Gomez-Medrano, who also is a native and citizen of El Salvador. The couple married in the United States on December 17, 2016. Portillo-Solis and Gomez-Medrano entered the United States near Sasabe, Arizona, on September 4, 2015, without inspection.

On September 23, 2015, the Department of Homeland Security initiated removal proceedings against Portillo-Solis. The IJ held a hearing on November 23, 2015 and established removability for Portillo-Solis. That same day, Portillo-Solis filed an application for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and protection under the CAT under 8 C.F.R. §§ 1208.160-1208.18. The IJ held an individual hearing on April 10, 2018, considered all the evidence and testimony, and determined that Portillo-Solis was ineligible for relief from removal.

In support of his applications, Portillo-Solis claimed that in 2014 and 2015, members of the MS-13 criminal gang tried to extort money from him, and that he experienced other threats of violence in El Salvador. Portillo-Solis testified before the IJ that gang members came to his and Gomez-Medrano's house demanding money from Gomez-Medrano. He also testified that gang members beat her on the face, back, and legs, and that she gave the gang members $150.00. This continued and Gomez-Medrano had to give more money and food to the gang members. According to Portillo-Solis, on June 14, 2015, his neighbors came to his house to seek refuge because gang members abducted their father and three children.

Portillo-Solis also stated that he feared he would be subjected to future violence by the gangs due to his religious identity as an Evangelical Christian. During cross-examination, Portillo-Solis asserted that MS-13 gang members who came to his home and took $150 "knew him" but he could not confirm that they were aware of his religious beliefs prior to this robbery. He further stated that gang members asked him and Gomez-Medrano to store weapons in his home and to transport drugs for them because, due to his religious beliefs, he would be less suspicious. The IJ determined that the claim lacked a motivational nexus to his religion, and the BIA determined that the IJ did not clearly err in finding this lack of nexus. The IJ also determined that Portillo-Solis

had no well-founded fear of future persecution and therefore was ineligible for protection under the CAT because he failed to show that he would suffer harm at the hands of the gang members that would "more likely than not" be inflicted with complicity or acquiescence of a public official.

The IJ found Portillo-Solis' record to have "significant and material discrepancies," including inconsistent testimony, contradictory documentary evidence, and evasive answers. The IJ concluded that Portillo-Solis did not testify credibly. The IJ then denied Portillo-Solis' claims based on his failure to meet the requirements for asylum, withholding of removal, and protection under the CAT.

In May 2018, Portillo-Solis filed an appeal of the IJ's decision regarding his asylum, withholding-of-removal, and protection under the CAT claims. Portillo-Solis argued that his "religion was at least one central reason that the gang targeted [him]." He further claimed that his religious identity became relevant in the days before he fled El Salvador, when the gang asked him and his wife to transport dugs because their identity as devout Christians would divert suspicion from them. The BIA interpreted this to mean that gang members "were not offended by [Portillo-Solis'] religious faith [;] . . . they merely seek to exploit his reputation as a religious person as means of facilitating their criminal enterprises." Finding no clear error in the IJ's decision that Portillo-Solis is ineligible for asylum, withholding of removal, or protection under the CAT, the BIA dismissed Portillo-Solis' appeal in an opinion affirming the IJ's decision. Portillo-Solis timely petitioned this Court to review the BIA's affirmance of the IJ's denial of his application for asylum, withholding of removal, and protection under the CAT.

## II. ANALYSIS

When the BIA "issues a separate opinion, rather than summarily affirming the [IJ's] decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*,

557 F.3d 429, 435 (6th Cir. 2009). "To the extent that the BIA has adopted the IJ's reasoning . . . we also review the IJ's decision." *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009). We review the IJ and BIA's findings of fact under the substantial-evidence standard. *Id.* "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]" *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006); 8 U.S.C. § 1252(b)(4)(B). Under that standard, "[w]e may not reverse such findings simply because we would have decided them differently." *Al-Ghorbani*, 585 F.3d at 991 (citing *Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005)).

### a. Asylum and Withholding of Removal

The Immigration and Nationality Act ("INA") establishes the United States' discretion to grant asylum to a "refugee." 8 U.S.C. § 1158(a). "An applicant for asylum must demonstrate that [he] is a refugee as defined by the INA." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (citing 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(a)); *see also* INA §§ 208(b)(1)(A), B(i); 8 C.F.R. § 1208.13(a). To prove his refugee status, the applicant must show that he is "unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of" his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]" 8 U.S.C. § 1101(a)(42)(A). To satisfy this "on account of" requirement (i.e., a "nexus"), the applicant must show that at least one of these five characteristics "was or will be at least one central reason for [his persecution]." 8 U.S.C. § 1158(b)(1)(B)(i). The burden is on the asylum applicant to show that he or she is a refugee and that one of the aforementioned protected characteristics "was or will be at least one central reason for persecuting the applicant." *Id.*

To be eligible for withholding of removal, a petitioner must establish that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). He "must establish a 'clear probability of persecution,' meaning that 'it is more likely than not that [he] would be subject to persecution.'" *Al-Ghorbani*, 585 F.3d at 993-94 (quoting *INS v. Stevic*, 467 U.S. 407, 413, 424 (1984)). "Persecution" is "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009) (quotations omitted). Such "[p]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive[,]" and "harassment or discrimination without more does not rise to the level of persecution." *Ali v. Ashcroft*, 366 F.3d 407, 410 (quotations and citations omitted). A few isolated incidents of verbal harassment or intimidation do not qualify as "persecution," particularly when those incidents are "unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. I.N.S.*, 146 F. 3d 384, 390 (6th Cir. 1998).

The IJ determined that Portillo-Solis was not entitled to asylum and withholding of removal because he lacked credibility, but even if he was credible, he was not entitled because he failed to demonstrate that he would be persecuted if he returned to El Salvador. We agree that Portillo-Solis has failed to meet his burden of demonstrating that he experienced "persecution" and that it was on account of his race, religion, nationality, or membership in a particular social group of political opinion, as required under the INA. *See* INA § 1101(a)(42)(A). The record shows that what Portillo-Solis experienced were isolated incidents of crime, which broadly affected the population of El Salvador. The asylum applicant must demonstrate that his persecutor was

motivated to commit an act because of the applicant's belief or other protected characteristic. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483 (1992). Portillo-Solis has failed to do so. While MS-13 gang members may have threatened and extorted from Portillo-Solis, he was not persecuted on the basis of his religion. Portillo-Solis also failed to provide any evidence that El Salvadorian persons practicing Evangelical religion are targeted or persecuted. [AR 64]. The IJ concluded that Portillo-Solis failed to demonstrate that he will more likely than not be persecuted in El Salvador on the basis of his religion. [AR 64].

We cannot conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B). Substantial evidence supports the decisions of the IJ and the BIA that Portillo-Solis failed to meet his burden of proving a clear probability of persecution. Further, it is reasonable that the IJ and BIA would doubt a clear probability of future prosecution. Portillo-Solis has failed to illustrate that he suffered past persecution and was therefore not entitled to the presumption of well-founded fear of future persecution. See 8 C.F.R. §1208.13(b)(1). We will not disturb the finding of the IJ and the BIA denying Portillo-Solis's petition for asylum and withholding of removal.

### b. Protection under the CAT

Likewise, we find that substantial evidence supports the decisions of the BIA and IJ that Portillo-Solis did not meet his burden of proving a clear probability of torture by or with the acquiescence of the El Salvadorian government. *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004); 8 C.F.R. § 1208.18(a)(1). Similar to withholding of removal, to be eligible for protection under the CAT, Portillo-Solis must prove that "it is more likely than not that [he] would be tortured if removed to" El Salvador. 8 C. F. R. § 1208.16(c)(2); *see also Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010) (quotations omitted).

Torture is extreme and includes intentional acts to punish, intimidate, or coerce which cause mental or physical pain or suffering. *Id.* The torture must be "with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Unlike an application for withholding of removal, the persecutor's motivations for torture are irrelevant and need not be based on one of the five protected grounds. *Cruz-Samayoa*, 607 F.3d at 1155 (quotations omitted). Rather, under the CAT, the petitioner must show a particularized threat of torture. *Id.* (quoting *Almuhtaseb v. Gonzales*, 453 F.3d 743, 751 (6th Cir. 2006)). The IJ considers (1) evidence of past torture inflicted upon the applicant; (2) evidence that the applicant can relocate to a part of the country of removal where he is not likely to be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal; and (4) other relevant information regarding conditions in the country of removal in order to assess the risk of future torture. *Ali v. Reno*, 237 F.3d 591, 596-97 (6th Cir. 2001). An applicant's credible testimony may be sufficient to sustain his burden of proof without corroboration. 8 C.F.R. § 1208.16(c)(2).

Portillo-Solis makes the same arguments for protection under the CAT that he made for withholding of removal. The BIA determined that the IJ's findings were not clearly erroneous and that Portillo-Solis failed to demonstrate evidence of a *particularized* risk of future harm in El Salvador or that the government would consent to or acquiesce in his torture. *Cruz-Samayoa*, 607 F.3d at 1155. Portillo-Solis has not demonstrated that it is more likely than not that the El Salvadorian government would consent to or acquiesce in his torture if he were removed to El Salvador. *Id.*; *see also* 8 C.F.R. § 1208.18(a)(1).

Portillo-Solis testified that he was threatened and extorted, not by government actors, but by members of a gang. However, the CAT protections exclude torturous acts inflicted by private actors. *See Ali*, 237 F.3d at 597. For the same reasons noted above, we find that the IJ and BIA's decisions are supported by substantial evidence. This Court only reverses the BIA's decision if it is manifestly contrary to law and the record evidence "not only supports a contrary conclusion, but indeed compels it." *Amir v. Gonzales*, 467 F.3d 921, 924 (6th Cir. 2006). We find no such compelling evidence here.

### III. Conclusion

For the foregoing reasons, we **DENY** Portillo-Solis' petition.