**NOT RECOMMENDED FOR PUBLICATION**
File Name: 21a0406n.06

**No. 20-3580**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MIGUEL ANGEL GUILLEN, | ) | |
| | ) | **FILED** |
| Petitioner, | ) | Aug 26, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| MERRICK B. GARLAND, Attorney | ) | THE UNITED STATES BOARD OF |
| General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | OPINION |

BEFORE: KETHLEDGE, STRANCH, and NALBANDIAN, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Miguel Guillen was a soldier in the El Salvadoran Army from 1983 to 1985, during which time the army perpetrated numerous human rights abuses on guerillas and civilians. When he applied for asylum in the United States, an immigration judge ("IJ") and the Board of Immigration Appeals concluded that Guillen was barred from relief because he had failed to satisfy his burden to show that he had not participated in the human rights abuses. Guillen appeals, arguing that the immigration judge erred in shifting the burden to him before the Government had put sufficient evidence in the record to show a nexus between his conduct and the abuses as well as knowledge of the abuses. Because we conclude that Guillen has failed to exhaust his arguments, we **DENY** the petition for review.

## I.    FACTUAL BACKROUND

El Salvador endured a civil war from 1980 to 1992.  During this conflict, the El Salvadoran Army battled several factions of guerillas and perpetrated significant human rights abuses. The El Salvadoran Army conducted "zone killings" and "sweeps" from 1980 to 1983 to keep civilians from supporting the guerillas.  Subsequently, "[f]rom 1984, the use of terror tactics by the military—indiscriminate killings and extrajudicial executions of prisoners or suspected guerilla sympathizers—became more selective, but aerial bombing escalated sharply and illegal detentions and torture continued to be widespread."

Guillen joined the El Salvadoran Army in March 1983; he testified that he was enlisted unwillingly.  He left the army in January of 1985.  Guillen was in the second company of the Battalion Canas,[1] which was in the Fifth Brigade, and he served in the San Vicente area. He was trained to infiltrate guerilla camps and to obtain information.  Guillen reported this information to his colonel but claims he did not know what his colonel did with the information.  Guillen was aware that the army attacked the guerillas based on the information he provided but testified that he had never witnessed his battalion attack civilians or commit atrocities against civilians.  He left the army in 1985, after his company disbanded.  The guerillas apparently identified Guillen and visited his home while searching for him. When they did not find Guillen there, they killed his 13-year-old brother.

Guillen arrived in the United States in 1987.  He filed his first asylum application in October 1988, his second application in 1993, and his third application in 1995.  In 2001, he filed for cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act (NACARA), Pub. L. No. 105-100, § 203(a)(1), 111 Stat. 2160, 2197–98 (1997).    USCIS

---

[1] The battalion's name is spelled variously "Cannas" and "Canas" throughout the administrative record.

determined in 2006 that the Immigration and Naturalization Act's persecutor bar, 8 U.S.C. § 240A(c)(5), might apply to Guillen's petition and referred the case to an IJ. Guillen then filed an amended application for cancellation of removal under NACARA in 2011, which the Government opposed based on USCIS's determination concerning the persecutor bar. The IJ, Judge Pazar, held a hearing in 2012. During his testimony, Guillen was inconsistent about what happened to guerillas after battles. Among other things, Guillen appeared to contradict himself about whether the army took guerillas as prisoners.

The Government submitted a database of human rights abuses compiled by El Rescate, an NGO. According to this database, there were six specific human rights violations—five captures of individuals and one assault—committed in the San Vicente area during the time Guillen was in the El Salvadoran army. Of these six, only two are specifically attributed to Battalion Canas. There is no information in the record about how Guillen's conduct might or might not have facilitated any of these incidents.

Judge Pazar found Guillen to be not credible. He noted that Guillen had been unresponsive to questioning by the Government and the Court. IJ Pazar highlighted Guillen's inconsistent testimony about the treatment of guerillas and civilians by the army and found that some of his assertions were implausible. The IJ concluded that Guillen's testimony could be "an attempt to distance himself as well as his battalion from any persecutory involvement with guerillas . . . ." These inconsistencies were "central" to Guillen's testimony and justified an adverse credibility finding.

Judge Pazar also concluded that the Government had presented enough information supporting Guillen's possible participation in persecution to shift the burden to Guillen to demonstrate by a preponderance of the evidence that the persecutor bar did not apply. But IJ Pazar

noted that "[t]he majority of the incidents listed either did not occur in San Vicente or occurred after Respondent left the army. Also, the incidents that did occur while Respondent was in the Canas Battalion do not list the specific sites of the incidents."

Judge Pazar determined that the evidence submitted by the Government supported the conclusion that some individuals in the Fifth Brigade (which contained 3,600 people) and Battalion Canas (which contained 1,200 people) committed human rights abuses during the time of Guillen's service. But he also determined that nothing in the record connected Guillen's actions to those abuses. Under *Diaz-Zanatta v. Holder*, 558 F.3d 450 (6th Cir. 2009), IJ Pazar found that there was no nexus between Guillen's information-gathering activities and any of the specific atrocities the Government had presented, although his analysis in places relied on Guillen's non-credible testimony. Judge Pazar also determined that Guillen lacked scienter. Here, too, the IJ relied on Guillen's testimony, which he had previously concluded was not credible. In sum, IJ Pazar concluded that although the burden had shifted to Guillen, the persecutor bar could not apply because the record did not contain evidence establishing the requisite nexus and scienter required under *Diaz-Zanatta*.

The Government appealed and the BIA remanded. The BIA concluded that the Government, by providing evidence that Guillen may be subject to the persecutor bar, had shifted the burden to Guillen to demonstrate that he was not subject to it. In a footnote, the BIA stated that on appeal, Guillen had not contested the adverse credibility finding and did not "specifically address" the IJ's conclusions about the burden-shifting framework. It noted that the IJ Pazar had relied almost exclusively on Guillen's non-credible testimony to show that he had met his burden in defeating the persecutor bar. The BIA remanded for further explanation from Judge Pazar as to how Guillen could meet his burden absent credible testimony.

On remand, the case was reassigned to IJ Holt due to IJ Pazar's retirement. Judge Holt held an additional hearing, at which she declined to reopen the issue of Guillen's credibility. But she allowed additional testimony from Guillen and his wife. Guillen testified about the attempts he had made to obtain a letter or testimony from his sergeant. Guillen's wife testified that Guillen had told her he had not participated in any human rights abuses.

In Judge Holt's subsequent opinion, she held that the law of the case doctrine applied to Judge Pazar's adverse credibility determination, and that in any event Guillen had not challenged the finding before her or the BIA. IJ Holt agreed that the burden had shifted to Guillen. In her view, even with the additional evidence from the hearing, Guillen failed to show by a preponderance that the persecutor bar did not apply and therefore did not satisfy his burden. The BIA affirmed. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

The BIA affirmed IJ Holt and added additional commentary. Accordingly, we review IJ Holt's decision "as supplemented by the BIA, as the final administrative order." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). We apply the "substantial evidence" standard to the factual findings of the IJ and overturn them "only if 'the evidence not only *supports* [reversal], but *compels* it.'" *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)) (emphasis in *Elias-Zacarias*) (alteration in *Yousif*). We review questions of law de novo. *Id.* In doing so, we "'defer to the [IJ]'s reasonable interpretations of the INA.'" *Diaz-Zanatta*, 558 F.3d at 454 (quoting *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006)) (alteration in *Diaz-Zanatta*). Law of the case determinations are reviewed for abuse of discretion. *United States v. Cunningham*, 679 F.3d 355, 374 (6th Cir. 2012).

**B.** **Discussion**

A grant of asylum or withholding of removal is impermissible for a person who "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1158(b)(2)(A)(i) (asylum); *see also* 8 U.S.C. § 1231(b)(3)(B)(i) (withholding of removal) (similar language). Once the IJ has determined that the persecutor bar might apply, the burden shifts to the alien to demonstrate that it does not. 8 C.F.R. § 1240.8(d) ("If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.").

Circuit courts, including our own, have imposed additional requirements for the persecutor bar to apply. The applicant "must have done more than simply associate with persecutors; there must have been some nexus between the alien's actions and the persecution of others, such that the alien can fairly be characterized as having actually assisted or otherwise participated in that persecution." *Diaz-Zanatta*, 558 F.3d at 455. This nexus must be more than "tangential." *Id.* at 458. Second, if there is a nexus, the applicant "must have acted with scienter; the alien must have had some level of prior or contemporaneous knowledge that the persecution was being conducted." *Id.* at 455. Once the persecutor bar is invoked, "the asylum petitioner bears the burden of demonstrating that the persecution bar does not apply to her." *Id.* at 458. But "[t]he mere fact that [the applicant] may be associated with an enterprise that engages in persecution is insufficient by itself to trigger the effects of the persecutor bar." *Id.* at 456–57 (quoting *Gao v. United States Att'y Gen.*, 500 F.3d 93, 99 (2d Cir. 2007)).

On appeal, Guillen argues that IJ Holt erred by applying the law of the case doctrine to IJ Pazar's adverse credibility finding but not to his conclusion that the persecutor bar did not apply

to Guillen under *Diaz-Zanatta*. He also argues that the persecutor bar, properly applied, requires the Government to present a prima facie case that the nexus and scienter requirements are met before the burden shifts to the applicant. The Government argues that we lack jurisdiction over this appeal under 8 U.S.C. § 1252(d)(1) because Guillen failed to exhaust all of his arguments before the BIA. It contends that Guillen waived the argument concerning Judge Pazar's adverse credibility finding by not raising it in his opening brief, and that he failed to raise the law of the case argument before either the Board or Judge Holt. The Government also argues that Guillen did not raise the burden-shifting issue with the BIA or with IJ Holt on remand. In reply, Guillen points to several places in the record, starting in 2011, where he contends the burden-shifting issue has been raised, and he argues that the BIA waived the exhaustion requirement by sua sponte raising the burden-shifting issue when it remanded to IJ Holt.

"The purpose of Section § 1252(d)(1)'s exhaustion requirement is (1) to 'ensure that . . . the agency responsible for construing and applying the immigration laws and implementing regulations . . . has had a full opportunity to consider a petitioner's claims." *Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) (quoting *Theodoropoulos v. INS*, 358 F.3d 162, 171 (2d Cir. 2004)). Failure to exhaust in this context renders the claims unreviewable by this court. *Id.* at 559–60. Exhaustion requires that each claim be presented to the BIA with "precision." *Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 (6th Cir. 2020). However, where the BIA raises an issue sua sponte, "the BIA's action waives that issue's exhaustion requirements." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). To raise the issue sua sponte, the BIA must have "addressed the merits of the issue" through either explicitly considering the merits or summarily affirming the IJ's decision. *Id.* at 434–35; *see Hassan v. Gonzales*, 403 F.3d 429, 433 (6th Cir. 2005).

With respect to Guillen's arguments about burden shifting and the law of the case doctrine, the BIA has done neither. The BIA issued its own opinion affirming IJ Holt's determinations, and Guillen did not raise his arguments in that appeal. Guillen's appeal brief consisted of one paragraph of argument, which asserted that IJ Holt had erred in applying the persecutor bar but raised no specific arguments about the burden-shifting framework or the law of the case doctrine. Guillen points to the BIA's footnote in its opinion remanding IJ Pazar's decision, contending that because the BIA observed that Guillen had not challenged the shifting of the burden to him, it sua sponte addressed the merits of the claim. But the BIA simply noted that Guillen had not challenged IJ Pazar's determination that the burden had shifted to Guillen once it was possible that the persecutor bar applied. In other words, the BIA's discussion of the issue is entirely distinct from the issue Guillen raises on appeal, which concerns "the *prima facie* evidentiary requirement to trigger the burden shift to the applicant . . ." and the BIA has not "addressed the merits of [that] issue." *Khalili*, 557 F.3d at 434–35.

Guillen also cites earlier record evidence, but this too is unavailing. In 2011, Guillen contended that his mere membership in the army was not sufficient to trigger the persecutor bar and that there was no nexus between his conduct and any persecution. Likewise, he argued in his motion for summary affirmance of IJ Pazar's ruling that the evidence in the record was insufficient for the persecutor bar to apply. Neither of these amounts to making the argument that the Government must make a prima facie case before the burden shifts to the applicant. And although there was discussion of this issue before IJ Pazar during the 2012 hearing, Guillen has never squarely presented this issue to the BIA.

Guillen's arguments below concerning the burden-shifting framework of the persecutor bar and the law of the case doctrine are therefore not specific enough to be considered exhausted.

## III.    CONCLUSION

Because we conclude that Guillen has not exhausted his claims, we **DENY** his petition for review.