NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  07a0024n.06
Filed:  January 8, 2007

06-3199

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SALIBA ABUSADA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| v. | ) | AN ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO GONZALES, Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before:  DAUGHTREY and GIBBONS, Circuit Judges, and EDMUNDS,[*] District Judge.

**PER CURIAM.**  The petitioner, Saliba Abusada, is a Palestinian who seeks review of a decision of the Board of Immigration Appeals (BIA) that affirmed an immigration judge's denial of his claims for asylum, withholding of removal, and relief under the United Nations Convention Against Torture.  Before this court, Abusada argues that the record supports his assertions that he suffered past persecution in his native country because of his religion and political opinion and that it is probable that he would be persecuted or tortured again should he return to the West Bank.  The petitioner additionally asserts that his due process rights were violated by the BIA's refusal to consider his request for

---

[*]The Hon. Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

voluntary departure under § 240B(b) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1229c(b). Because we find no basis on which to overturn the decision of the BIA, we deny review.

## FACTUAL AND PROCEDURAL BACKGROUND

Abusada's primary claim was based on his status as a devout Christian living in the West Bank. He maintained that in 1994, he had formed a religious organization at his school, devoted to performing "Christian activities" and to securing peace in the region. He said that as a result, he and other members of this organization were threatened by members of Hamas as they were leaving school. According to Abusada, the Hamas members demanded that his organization stop its activities, contending that they were "contradicting the principal [sic] and the goals of the Palestinians" and arguing that the group's activities were tantamount to "assisting and cooperating" with the Israelis. Despite this warning, the petitioner remained a member of the Christian organization.

A few years after this incident, Abusada said, he proposed that the Christian group establish a housing community in the West Bank, and he was elected to serve as liaison between the prospective housing community members and the "Greek Catholic Church," which provided funding. The land purchased for the housing community was located near a neighborhood consisting of Muslims and Hamas members. According to the petitioner, these "Muslim radicals" instantly objected to the housing community because they "could not face the fact that forty Christian families would come to live among them." Abusada

testified to general violence as his Muslim neighbors protested the construction of the housing community. As the record later developed, however, it became clear that the housing project had been successfully completed and, according to the petitioner's counsel, is still being inhabited by the Christians for whom it was constructed, including the petitioner's brother.

Nevertheless, Abusada testified in the immigration court that he was singled out for harassment after he hosted donors on a one-time visit to the proposed housing development. According to Abusada, after the visit his Muslim neighbors threatened him, saying, "We don't want to see these people because they could be double agents, they are Israelis, or they are against them." The petitioner further testified that after he moved into the housing project, his vehicle was burned by Hamas members and Muslim fundamentalists. When asked how he knew who had burned his vehicle, Abusada responded:

> The day they burned the vehicle I was inside the house fearing for my life[.] I did not go out. They were screaming, shouting, they told me Saliba, you are cooperating and assisting with the Israelis, that's why they are funding you bringing a lot of money and that's how you are building this housing community.

Abusada also told the immigration judge that because he did not desist in his activities with the housing community, he was beaten up by members of Hamas and Muslim extremists. According to the petitioner, his assailants identified themselves as Hamas members and told him, "We're here to kill you because you are the one, . . .

- 3 -

because you're bringing all this money from the Israelis so you can finish your project and build your community housing." Abusada explained that he was targeted because "they thought that all these people that I brought [to the housing community] were Jews, and they thought I'm the person in charge, that I'm dealing with them, I'm the person in charge of bringing all this money to finish this project."

Abusada said that as a result of the assault, he suffered a broken foot that required a three-day hospital stay. According to the petitioner, while he was in the hospital, "a very senior member in Hamas Movement" attempted to visit. A guard at the hospital refused to let the man in, however, and informed Abusada about the attempted visit. The petitioner testified, "The guard told me . . . that he knew these people and he told me that I better be careful from these people because he knew about the problems that existed."

After his release from the hospital, Abusada did not return to the housing community. Instead, he said, he stayed with friends in order to hide from his assailants and petitioned for a visa to visit his sister in the United States. Approximately two weeks later, he secured a visa and entered the United States at Detroit as a visitor for pleasure. Because he overstayed, the Immigration and Naturalization Service (now the Department of Homeland Security) initiated proceedings charging him with being removable pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act (INA). In response, the petitioner conceded removability but requested asylum under § 208 of the INA, withholding of

removal pursuant to § 241(b) of the INA, relief pursuant to the United Nations Convention Against Torture and, alternatively, voluntary departure under § 240B(b) of the INA.

At the conclusion of the evidentiary hearing, the immigration judge issued an oral ruling denying Abusada the relief he sought. In relevant part, the immigration judge's decision provided:

> [T]he Court notes that with respect to the incident [that] triggered his flight to the United States, the [petitioner] is not credible and he's not demonstrated it happened as he claimed it happened. Next, even if this incident happened as he claimed it to have happened, the Court does not believe the severity of it rises to the level of past persecution, nor does [sic] any of the prior problems that he had rise to the level of past persecution. Succinctly stated of course, the [petitioner] was involved in an area where there is civil strife. Generally speaking, civil strife and countrywide anarchy is not a basis for claiming persecution.
>
> The Court also notes . . . that the [petitioner] really has not expressed a view of fearing the government, whether it be the Israeli government or the Palestinian Authority.

On those bases, the immigration judge denied Abusada's claims for asylum, withholding of removal, and relief pursuant to the Convention Against Torture. In addition, the immigration judge found that Abusada had not established that he was eligible for voluntary departure under § 240B(b) of the INA.

The petitioner appealed the rulings to the BIA, which denied relief after adopting and affirming the immigration judge's decision. The Board further denied Abusada's claim on appeal that he was neither informed of nor afforded the opportunity to apply for pre-hearing

voluntary departure under § 240B(a) of the INA. Although immigration judges must provide information about pre-hearing voluntary departure under § 240B(a), the Board concluded that "even assuming that the Immigration Judge neglected to notify the respondent about the availability of this form of relief, the respondent has not shown resulting prejudice." The petitioner now appeals from the adverse administrative rulings.

## DISCUSSION

**A. Standard of Review**

We will uphold a determination by the BIA as long as the administrative decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "Under this deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)). Rather, in order to overturn a factual determination made by the Board, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1.

Moreover, credibility determinations are considered findings of fact and are reviewed under the substantial evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). As we noted in *Sylla*, 388 F.3d 924 (6th Cir. 2004), adverse credibility findings such as those in this case are afforded substantial deference, but the adverse findings "must be

- 6 -

supported by specific reasons." *Id.* at 926 (citing *Daneshvar v. Ashcroft*, 355 F.3d 615, 623

n. 7 (6th Cir. 2004)); *see also Gao v. Ashcroft*, 299 F.3d 266, 276 (3d Cir. 2002) ( "The

reasons must be substantial and bear a legitimate nexus to the finding.").

## B. Request for Asylum

Under 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1), in order to be eligible for asylum, a

petitioner is required to prove either past persecution or a well-founded fear of future

persecution based on a statutorily protected ground. "An applicant who has been found

to have established . . . past persecution shall also be presumed to have a well-founded

fear of persecution on the basis of the original claim," 8 C.F.R. § 208.13(b)(1), unless the

immigration judge finds, by a preponderance of the evidence, either that:

> (A) There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . ; or
>
> (B) The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so.

8 C.F.R. § 208.13(b)(1)(i)(A)-(B). In the absence of proof of past persecution, an asylum

applicant may still qualify as a refugee if he has a well-founded fear of future persecution

upon removal. "A well-founded fear of persecution has both a subjective and an objective

component: an alien must actually fear that he will be persecuted upon return to his

country, and he must present evidence establishing an 'objective situation' under which his

fear can be deemed reasonable." *Ali v. Ashcroft*, 366 F.3d 407, 410-11 (6th Cir. 2004) (quoting *Perkovic v. INS*, 33 F.3d 615, 620-21(6th Cir. 1994)). The burden of proving eligibility for asylum rests upon the petitioner. *See* 8 U.S.C. § 1158(b)(1)(B).

In seeking asylum in the United States, Abusada contended that he was the victim of persecution in the West Bank based on his religious beliefs and political opinion, alleging that being threatened, having his vehicle burned, and being physically assaulted by Hamas members and Muslim extremists not only constitutes past persecution but also should be considered sufficiently egregious to raise the presumption that he has a well-founded fear of future persecution. In support of his claims, Abusada testified before the immigration court and presented various pieces of documentary evidence. The BIA, however, concurred with the immigration judge's conclusion that Abusada "did not provide a credible claim in support of his applications for relief," "failed to provide sufficient credible evidence in support of his claims," and "did not meet his burden of establishing that he was persecuted, or has a well-founded fear of persecution were he to return to the Occupied Palestinian Territories, on account of a protected ground."

Before this court, Abusada contends that the discrepancies in his application and testimony cited by the immigration judge were immaterial and faults the BIA for failing to give his application "*de novo* review," apparently including the credibility determinations made by the immigration judge. Indeed, the BIA's failure to conduct such an independent review is the gravamen of this appeal. We conclude that this argument misconstrues the

function of review by the BIA. *See* 8 C.F.R. § 1003.1(d)(3)(i) ("The Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.")

But, more importantly, we conclude from the record before us that even if the immigration judge had found the petitioner credible, had given weight to the corroborating documents that he offered into evidence, and had accepted as established all the claims that he made in his attempt to prove past persecution, there still would not have been an adequate ground for granting asylum, because the evidence simply failed to establish either past persecution or a well-founded fear of future persecution.

Were we to assume that the petitioner's account of events in the West Bank were true, we would be forced to conclude that the harassment he encountered did not rise to the level of severity that courts have recognized as sufficient to establish past persecution. Although the INA provides no explicit definition of "persecution," we have adopted the Third Circuit's view that "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). "'Persecution' entails 'punishment or the infliction of suffering or harm,' but 'harassment or discrimination without more does not rise to the level of persecution.'" *Ali*, 366 F.3d at 410

(quoting *Mikhailevitch v. INS*, 146 F.3d 384, 389-90 (6th Cir. 1998)). In determining whether conduct constitutes persecution for purposes of an asylum claim, we look to "the overall context of the applicant's situation to ascertain whether the applicant has been subjected to persecution within the meaning of the INA so as to give rise to a presumption of a well-founded fear of future persecution." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005).

In this case, Abusada's claim of past persecution fails because he did not establish the requisite government involvement in his alleged persecution. It is well-established that "to create a presumption of a well-founded fear of future persecution, the applicant must establish that he or she was specifically targeted by the government for abuse based on a statutorily protected ground and was not merely a victim of indiscriminate mistreatment." *Id.* If the government itself is not responsible for the persecution, the asylum applicant must show that the government is unable or unwilling to control the group that is responsible. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) ("persecution [i]s the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control").

In the immigration court, the petitioner submitted three articles purporting to show that the Palestinian Authority was responsible for persecuting Christians in the West Bank. But, the State Department country reports for Israel and the occupied territories note that both Israel and the Palestinian Authority "generally respected religious freedom in

practice." Indeed, the only indication of any Palestinian Authority involvement in religious persecution is a statement in the 2001 report observing that "[i]n past years, there were unconfirmed allegations that a small number of Muslim converts to Christianity were subject to societal discrimination and harassment by PA officials. However, there were no such reports during the year." This information does not strengthen Abusada's claim, however, because he never converted from Islam; he was born and raised a Christian.

In addition to relying on the lack of evidence confirming general persecution of Christians, the immigration judge concluded that Abusada himself "really has not expressed a view of fearing the government, whether it be the Israeli government or the Palestinian Authority." In fact, the immigration judge believed that the facts showed "the Palestinian Authority has gone out of its way to protect him." The petitioner's passport not only showed that he was able to travel freely both before and after his alleged persecution but also, unlike many travel documents issued by the Palestinian Authority, Abusada's passport lacked a restriction even on travel to Israel. In addition, after enduring the assault in which he suffered a broken foot, the petitioner was treated in a hospital affiliated with the Palestinian Authority and, during his stay, a hospital guard actually blocked access to the petitioner by a senior Hamas official. The immigration judge suggested that the guard had been hired by the Palestinian Authority specifically to protect Abusada and did, in fact, protect him by refusing admittance to the Hamas official. Although the guard could have been merely a regular hospital security guard doing his job of forbidding after-hours visitors, this incident is emblematic of the petitioner's overall failure to establish that he was

harmed by the government or by private individuals whom the government was unable or unwilling to control.

Ultimately, Abusada failed to show that he was more than "merely a victim of indiscriminate mistreatment." As the immigration judge noted, the petitioner "was involved in an area where there is civil strife." The immigration judge also pointed out, correctly, that "civil strife and countrywide anarchy is not a basis for claiming persecution," *See*, *e.g.*, *Matter of Sanchez and Escobar*, 19 I&N Dec. 276 (BIA 1985). The State Department country reports buttress this conclusion, indicating that the West Bank has suffered from "an occasional uprising from time to time, and violence from time to time, [but] this is far different from being persecuted."

Of course, even in the absence of past persecution, an asylum applicant may still qualify as a refugee if he can show a well-founded fear of future persecution. An applicant is not required to establish a reasonable possibility that he would be singled out individually for persecution if he shows that there is a pattern or practice in his country of persecution of a group of persons similarly situated to the applicant on the basis of one of the statutorily protected grounds. *See* 8 C.F.R. 208.13(b)(2)(iii). If the asylum applicant establishes his inclusion in and identification with such a group of persons, then his fear of persecution upon return will be deemed reasonable. *See id.* Here, however, Abusada failed to establish a well-founded fear of future persecution because there is no indication in the State Department country reports of a pattern or practice of persecution of Christians.

Therefore, we conclude that substantial evidence in the record supports the immigration judge's and the BIA's denials of Abusada's petition for asylum.

## C. Request for Withholding of Removal

Abusada also petitions for review of the administrative denial of his request for withholding of removal. Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Thus, in order to qualify for withholding of removal, the petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica*, 388 F.3d at 951. To make such a showing, a petitioner "must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return." *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)). Because this burden is "a more stringent burden than what is required on a claim for asylum," *id.* at 640 (quoting *Pilica*, 388 F.3d at 951), it follows from Abusada's failure to establish his eligibility for asylum that he cannot satisfy the more onerous burden for withholding of removal. *See, e.g.*, *Koliada*, 259 F.3d at 489.

## D. Request for Relief Under The United Nations Convention Against Torture

- 13 -

The petitioner additionally requested relief under the provisions of the United Nations Convention Against Torture. To obtain withholding of removal under that convention, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). This burden is significantly greater than the burden required to demonstrate eligibility for asylum. Whereas asylum may be granted by the attorney general upon a showing of a "well-founded fear of persecution," withholding of removal under the Convention Against Torture requires a showing that it is more likely than not that Abusada not only would be persecuted upon his return to the West Bank, but that he would be *tortured*. Because the petitioner cannot demonstrate entitlement to a grant of asylum in this case, he also cannot meet the more stringent requirements under the Convention Against Torture. *See*, *e.g.*, *Liti*, 411 F.3d at 641. Substantial evidence thus supports the immigration judge's denial of this extraordinary relief to Abusada.

**E. Failure of BIA to Consider Petitioner's Request for Voluntary Departure**

In his final issue on appeal, the petitioner asserts that he was denied due process when the BIA addressed only pre-hearing voluntary departure under § 240B(a) of the INA, 8 U.S.C. § 1229c(a), as opposed to voluntary departure under § 240B(b) of the INA, 8 U.S.C. § 1229c(b), which the petitioner requested during the petitioner's master calendar hearing. "'Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing.' However, '[t]he failure to be granted

- 14 -

discretionary relief [such as voluntary departure] does not amount to a deprivation of a liberty interest.'" *Ali*, 366 F.3d at 412 (quoting *Huicochea-Gomez v. INS*, 237 F.3d 696, 699-700 (6th Cir. 2001)). Acknowledging that voluntary departure is generally not reviewable, the petitioner nevertheless urges judicial review, asserting that the immigration judge and the BIA committed "material procedural errors." According to Abusada, the immigration judge erred in failing to address his request for voluntary departure under INA § 240B(b), and the BIA erred in addressing only pre-hearing voluntary departure under INA § 240B(a), which the petitioner claimed was "not raised by either party on appeal."

Despite the petitioner's assertions to the contrary, the immigration judge did assess his request for voluntary departure under INA § 240B(b) and his brief to the BIA did, in fact, raise INA § 240B(a), arguing that the immigration judge failed to meet his "duty to provide [the petitioner] with information about availability and requirements of voluntary departure under INA § 240B(a) and to provide him an opportunity to make an application during the hearing." In response, the Board's decision denying Abusada's appeal addressed voluntary departure under § 240B(a). Thus, the petitioner incorrectly argues that the BIA considered an issue he did not raise in his appeal. Nevertheless, the petitioner's failure to correct the mistake by moving the BIA to reconsider under 8 C.F.R. § 1003.2(b) deprives us of jurisdiction over his attempt to argue error by the Board. *See* 8 U.S.C. § 1252(d)(1). As a result, we cannot say that Abusada's constitutional rights were violated when he was denied the discretionary relief of voluntary departure. We do note that by merely submitting his passport and requesting voluntary departure, the petitioner did not meet the

requirements of § 240B(b). Thus, he would not be entitled to voluntary removal in any event.

## **CONCLUSION**

For the reasons set out above, we find no basis on which to disturb the decision of the Board of Immigration Appeals, and we therefore deny review of the Board's order denying relief to the petitioner.