NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0805n.06

No. 08-4615

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 17, 2009**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| LUAI NAJEEB HANNA HELAL; | ) | |
| AMANI NASEEM MICHAI HELAL; | ) | |
| IZIS LUAI NAJEEB HELAL; MAJID | ) | |
| LUAI NAJEEB HELAL; ZEID LUAI | ) | |
| NAJEEB HELAL, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES BOARD OF IMMIGRATION |
| Petitioners-Appellants, | ) | APPEALS |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC HOLDER, Jr., United States | ) | |
| Attorney General, | ) | |
| | ) | |
| Respondent-Appellee. | | |

Before:  MERRITT, GIBBONS, and McKEAGUE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge**.  Luai Najeeb Hanna Helal ("Luai"), his wife, Amani Naseem Michai Helal ("Amani"), and their three minor children (together, "the Helals") petition for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of their petitions for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

For the reasons that follow, we DISMISS the Helals' petition for review insofar as it seeks review of the denial of their application for asylum and DENY the petition for review and AFFIRM the decision of the BIA in all other respects.

-1-

I.

Luai, the lead petitioner, was born in Kuwait to parents of Palestinian Christian origin, is a Jordanian citizen, and lived in Jordan from 1976 until he departed for the United States in 2002. Amani was born and lived in Bayt Shahur, Israel, in the occupied West Bank, until she married Luai in Jordan in 1993. She has Jordanian citizenship by marriage. The three children—Izis, Majid, and Zeid—were born in Amman and are Jordanian citizens. Although Jordan issues passports of varying degrees of citizenship to Palestinians living in Jordan, the Helals have unrestricted, full Jordanian citizenship because Luai's parents obtained Jordanian citizenship shortly after the 1948 Arab-Israeli conflict. The Helals are practicing Christians and seek refuge in the United States allegedly because they fear persecution due to their Palestinian Christian origin.

Luai arrived in the United States on April 22, 2002, and Amani and the children joined him on June 22 of that year. On August 4, 2003, nearly one year and four months after arriving in the United States, Luai applied for asylum, withholding of removal, and protection under the CAT on behalf of himself and his family. In the application, Luai conceded that he had missed the statutory one-year deadline for filing an asylum application, stating that when he arrived in the United States, he "had just [come] to visit our friends and family and [he] waited for a while, hoping that the situation in the homeland w[ould] change for the better." He also justified his untimely filing by citing his inability to afford an attorney. In his supplementary application, submitted on December 5, 2003, Luai said that he failed to file on time "for many reasons," including that the situation had not improved in Jordan. In testimony before the IJ, Luai also, for the first time, stated that he failed

-2-

to timely file because he was unaware of the one-year deadline and because his wife had been ill in April and May 2003.

On December 5, 2003, Amani submitted her own application for asylum, listing Luai and the children as derivative applicants. Her application focused on her fear of persecution in the West Bank by Muslim extremists and the Israeli government because of her Christian faith, although she noted that she also feared returning to Jordan. On March 15, 2006—two weeks before the Helals' first merit hearing—Amani amended her application to incorporate the claims made in her husband's application with respect to Jordan. In both of her applications, Amani conceded that her application was filed after the one-year deadline and explained that the delay was because "[she] was waiting for [her] husband's application but [] decided to file [her] own after consulting with [her] attorney." Although she did not cite her illness in May 2003 as justification for untimely filing until testifying at the merits hearing, she did include documentation of that illness in her amended application in March 2003.

In their applications and testimony before the IJ, the Helals allege that they fear that they would be imprisoned or killed by Jordanian officials and their children kidnapped to be raised as Muslims if returned to Jordan. Luai admitted that he could practice his faith in Jordan, but maintained that it was dangerous to go to church and that the Jordanian officials prohibited proselytizing to Muslims, which impeded the free exercise of their religion. Amani testified that she also went to church but was afraid to do so. The Helals conceded that the Jordanian government protected Christian worshippers by placing armed guards at the church. Despite the discrimination

and harassment, Amani and Luai admitted that no one in their family had been physically harmed in Jordan.

In addition to describing general discrimination, the Helals alleged four specific incidents that they argue demonstrate past persecution. First, they cite the economic discrimination that Luai and his father had encountered in their marble business, such as Muslim clients and contractors canceling orders and deals when they discovered that the Helals were Christian or that they had done business with Israelis. The second allegation involved two traffic stops. Luai stated that on June 18, 2001, he had been stopped by police while driving his car with a cross hanging on the rearview mirror. A policeman asked him if he was a Christian, and, when he answered yes, the policeman searched his vehicle, arrested him, and kept him in jail for two days without charge. Luai conceded that he was never beaten or physically harmed during his detention, but stated that he was harassed and made to clean the prison. In a March 21, 2001, traffic stop, police asked Luai to remove the cross from the rearview mirror, purportedly because it obstructed the view. He did so and was not arrested on that occasion, although he did receive a ticket. In the third event, on October 7, 2000, Amani and the two oldest children returned from shopping to find their car vandalized. The windshield and windows had been broken and Islamic phrases written on the car. The cross had been ripped off and discarded on the floor. When Luai later returned to the car and questioned some of the neighbors about the vandalism, they responded that Muslims had done it. According to the Helals, the police refused to investigate because there were no witnesses. Finally, the fourth instance was the treatment of the Helals' oldest child, Izis, at school. Unable to afford to send Izis to Christian schools, the Helals sent her to public school, where she was taught the Koran, required to say Islamic

prayers, and taught to hate Jews. She was told to wear *hijab* to school, and when Amani inquired about the requirement, school officials said that if Izis did not wear it, they could not ensure her safety.

Because of these incidents, and especially Izis's unhappiness at school, Amani took the children to her parents' home in Bayt Shahur on July 8, 2001. This turned out to be a worse situation for the children because of renewed fighting in the West Bank. The children became depressed and despondent and saw counselors at the Red Crescent and East Jerusalem YMCA, both of which concluded that the children suffered from acute stress and post-traumatic stress disorder due to the violence. Amani claims that she decided to take the children to the United States when, in February 2002, the Red Crescent recommended that the children leave the region to recover. Amani and the children returned to Jordan and departed for the United States shortly thereafter.

On September 12, 2003, the Helals received notices to appear for removal proceedings. In preliminary hearings, the Helals conceded removability. After some confusion regarding Amani's appropriate designated country of removability, the IJ directed Jordan as the state of removal for the Helals. The IJ held two merits hearings, during which both Luai and Amani testified. Although the IJ noted some inconsistencies in the testimony and applications and a lack of corroborating evidence, the IJ found the Helals to be credible.

The IJ determined that the Helals' asylum applications were time-barred because all of the applications were filed more than one year after the Helals arrived in the United States and were not otherwise excepted from the limitation. The IJ found that Amani's illness could not constitute an extraordinary circumstance with respect to Luai's application because it occurred more than one year

after Luai arrived in the United States, and that otherwise "Luai failed to present a single piece of objective evidence demonstrating that there was a fundamental or any change in conditions in the country of Jordan to constitute a sufficient or significant amount of change to support changed circumstances." The IJ also noted that Amani's reasons for untimely filing in her application differed from those presented in testimony and that her illness did not constitute extraordinary circumstances because she had not filed within a reasonable time after surgery. Despite finding the applications time-barred, the IJ went on to address the merits of their claim, finding that the incidents alleged by the Helals did not rise to the level of persecution contemplated by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* On September 24, 2007, the IJ found the Helals ineligible for asylum, denied their petitions for withholding of removal and protection under the CAT, and ordered their removal.

The Helals timely appealed to the BIA, which affirmed the IJ's order of removal on November 7, 2008. The BIA rejected the Helals' challenge to the IJ's findings regarding untimely filing. Examining the documentation of Amani's illness, including medical records, the BIA found that the evidence supported the IJ's determination that there was no evidence that Amani's illness began in April 2003 nor that the duration of Amani's recovery was so great as to make a seven-month delay in filing her application reasonable.

With respect to the IJ's denial of withholding of removal, the BIA found that two nights' confinement, one incident of vandalism, the school's requirements that Izis wear *hijab* at school, and a lack of any purported physical harm to the Helals supported a finding that the discrimination that the Helals suffered did not rise to the level of persecution contemplated by the INA. The BIA also

considered a 2006 country report published by the United States Department of State on which the Helals rely heavily in an attempt to provide sufficient evidence of routine persecution of Christians and Palestinians in Jordan to warrant a fear of future persecution. *See* U.S. Dep't of State, *Jordan—Country Reports on Human Rights Practices 2006* (2007). Considering the country report and the record as a whole, the BIA agreed with the IJ's determination that the Helals had not demonstrated that it was more likely than not that upon return to Jordan they would be persecuted because of their religion. The BIA also affirmed the IJ's denial of protection under the CAT, stating that the Helals had not alleged past physical harm by Jordanian government officials and failed to meet their burden of establishing that it is more likely than not that they would be tortured upon their return to Jordan. The BIA therefore dismissed the Helals' appeal, and the Helals timely petitioned for review.

## II.

Where, as here, the BIA has adopted the IJ's decision with additional commentary, we review the decision of the IJ, as supplemented by the BIA, as the final administrative order. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). Questions of law are reviewed *de novo*, but we defer to the BIA's reasonable interpretations of the INA. *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006). Thus, we must "uphold the BIA's determination against withholding the removal of an alien, unless it is 'manifestly contrary to the law.'" *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003) (quoting *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir. 2001) (citing 8 U.S.C. § 1252(b)(4)(B)–(C))). This same standard controls our review of administrative determinations regarding claims for protection under the CAT. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006).

We review administrative factual findings by the IJ and BIA under the deferential "substantial evidence" standard. *Id.* Under this standard, findings of fact are "conclusive" unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "Facts relevant to . . . [the] denial of asylum applications, withholding of removal, and the CAT are all reviewed under this same standard." *see also Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008).

III.

A.

Generally, we have jurisdiction to review a final order of removal of the BIA pursuant to 8 U.S.C. § 1252(a)(1). However, our jurisdiction to review a BIA determination that an asylum application is time-barred is statutorily limited. "No court shall have jurisdiction to review any determination of the Attorney General under [8 U.S.C. § 1158(a)](2)" regarding whether extraordinary or changed circumstances excuse untimely filing. 8 U.S.C. § 1158(a)(3).[1] Consequently, we have held that we may only review the denial of an asylum application for untimeliness "when the appeal seeks review of constitutional claims or matters of statutory construction" but not "when the appeal seeks review of discretionary or factual questions."

_____

[1] To be eligible for asylum in the United States, an applicant must file an asylum application within one year of arriving in the United States. 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(2). An applicant may nonetheless be eligible for asylum after filing an untimely application if he demonstrates either "changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application" occurring within the one-year time limit. 8 U.S.C. § 1158(a)(2)(D); *see also* 8 C.F.R. § 1208.4(a)(2)(i)(B), (a)(4)–(5). "Extraordinary circumstances . . . may include but are not limited to . . . [s]erious illness or mental or physical disability" or "serious illness or incapacity of the applicant's legal representative or a member of the applicant's immediate family." 8 C.F.R. 1208.4(a)(5)(i), (vi).

*Almuhtaseb*, 453 F.3d at 748; *see also Castellano-Chacon*, 341 F.3d at 544 ("We join our sister circuits on this point and hold that we are barred from reviewing the BIA's decision denying Castellano's application on the basis that it was untimely . . . ."). This jurisdictional bar applies to BIA and IJ determinations regarding both whether "extraordinary circumstances" exist and whether an application is filed within a reasonable period after extraordinary or changed circumstances arise as required by 8 C.F.R. § 1208.4(a)(4)(ii), (a)(5). *See Fang Huang v. Mukasey*, 523 F.3d 640, 651 (6th Cir. 2008) (finding that whether an application was submitted within a reasonable period is a "predominantly factual" question that an appellate court lacks jurisdiction to review); *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007) (recognizing a jurisdictional bar to review of "extraordinary circumstances" under *Almuhtaseb* and 8 U.S.C. § 1252(a)(2)(D) because this is a predominantly factual determination).

The Helals continue to argue on appeal that lack of knowledge of the deadline and Amani's illness constitute extraordinary circumstances excusing their untimely filing. However, the Helals merely challenge the IJ's and BIA's factual determinations, argue that the merits of their claim excuse their untimeliness, and fail to raise any colorable constitutional or legal claim. Because Congress has mandated that we do not have jurisdiction to review such discretionary and factual determinations by the BIA or IJ, we dismiss for lack of jurisdiction the Helal's petition to review the BIA's denial of their asylum applications as time-barred.

B.

"[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's

race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). In order to qualify for withholding of removal, a petitioner "must demonstrate that there is a clear probability that he would be subject to persecution." *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998); *see also Castellano-Chacon*, 341 F.3d at 545. A "clear probability of persecution . . . is a stricter standard than the 'well-founded fear' standard that applies with respect to applications for asylum," *Ali v. Ashcroft*, 366 F.3d 407, 411 (6th Cir. 2004) (citing 8 U.S.C. § 1231(b)(3)(A) and *INS v. Stevic*, 467 U.S. 407, 430 (1984)). The petitioner must demonstrate either past persecution, resulting in a rebuttable presumption of future persecution, or demonstrate that future persecution is "more likely than not." 8 C.F.R. § 1208.16(b)(1).

In their challenge to the BIA's determination on their withholding of removal claim, the Helals argue that the IJ and BIA "trivialized" the discrimination of Palestinians and Christians reported by the 2006 State Department report and ignored the trauma suffered by the Helals as a result of the vandalized car, Luai's traffic incidents, and the discriminatory curriculum and harassment of Izis at school. However, the record indicates that both the IJ and the BIA addressed these incidents and the 2006 country report in detail. The BIA ultimately determined that, cumulatively, the incidents did not rise to the level of persecution necessary to warrant withholding of removal. We find that the record as a whole provides "substantial evidence" supporting the BIA's determination, and a reasonable factfinder would not be compelled to find to the contrary.

1.

Although the Helals demonstrate that they experienced harassment and discrimination in Jordan because of their Christian faith, this showing, without more, is insufficient to rise to the level

-10-

of persecution contemplated by § 1231(b)(3)(A). *See Mikhailevitch*, 146 F.3d at 390 (reasoning that even if the evidence presented "compel[s] a determination that [they were] 'harassed' . . . because of [their] religious activities[, h]arassment alone . . . does not rise to the level of persecution under the [INA]"); *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995) ("Discrimination on the basis of race or religion, as morally reprehensible as it may be, does not ordinarily amount to 'persecution' within the meaning of the Act."). "[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Ali*, 366 F.3d at 410 (quoting *Ghaly*, 58 F.3d at 1431); *see also Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006) (adopting the Third Circuit's finding that "persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional" (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)) (internal quotation marks and alterations omitted)). Thus, a petitioner "must demonstrate more than the existence of a generalized or random possibility of persecution in his native country on account of the [protected status], in order to succeed in his application for withholding." *Castellano-Chacon*, 341 F.3d at 550 (citing *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998)); *see also Ali*, 366 F.3d at 410 (agreeing with the Seventh Circuit that "[c]onditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum" (citing *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001))); *Almuhtaseb*, 453 F.3d at 750 ("Almuhtaseb's fears of returning to the West Bank—shootings, shellings, bombings, settlers' attacks, lack of infrastructure, and lack of access to medical care—are based on 'the existence of a generalized or random possibility of persecution in [her] native country,' which is generally

-11-

insufficient to establish persecution" (citing *Castellano-Chacon*, 341 F.3d at 550) (alteration in original)).

The Helals' economic discrimination and Izis's unfortunate experience at public schools in Jordan amount to no more than religious discrimination, and the isolated incidents of traffic stops, a two-day detention, and vandalism do not amount to harassment of the sort that we have found to constitute persecution.

The Helals have also failed to present evidence that would compel us to find that they will more likely than not suffer future persecution if they return to Jordan. Because their "fear of future persecution is primarily based upon events that have occurred in the past that the [IJ] concluded, based on substantial evidence, do not rise to the level of persecution[, t]here is simply no evidence in the record to substantiate [their] testimony that [they] fear[] future persecution." *See Ali*, 366 F.3d at 411. Because the Helals admit that they suffered no physical harm and allege only general religious discrimination with four isolated incidents of more severe discrimination, it is less likely than not that they will be persecuted in the future.

2.

The Helals also fail to demonstrate a likelihood of future persecution based on a pattern or practice of persecution of a protected group to which they belong. *See* 8 C.F.R. § 1208.13(b)(2)(iii)(A); *Akhtar v. Gonzales*, 406 F.3d 399, 404 (6th Cir. 2005) (noting that future persecution may be demonstrated by evidence of targeted persecution of the individual applicant or a "pattern or practice of persecution of an identifiable group, to which the alien demonstrates he belongs, such that the alien's fear is reasonable" (citing *Capric v. Ashcroft*, 355 F.3d 1075, 1085 (7th

Cir. 2004))). Because the Helals belong to a protected religious group, we need only determine whether they have "presented sufficient evidence to compel a finding that [they] would, more likely than not, be persecuted on the basis of that membership." *See Castellano-Chacon*, 341 F.3d at 545 (citing *Stevic*, 467 U.S. at 424). The BIA found that they did not do so, and we find no evidence compelling a contrary conclusion.

We recently addressed an asylum application similar to the Helals' in which we affirmed a BIA determination denying asylum, withholding of removal, and protection under the CAT to a Jordanian Christian family raising similar allegations of harassment and discrimination. *See Haddad v. Holder*, No. 08-3559, 2009 WL 1391524, at *1–2 (6th Cir. May 15, 2009) (recounting the alleged "problems" the petitioner and his family encountered in Jordan because of their Christian faith, including name-calling, inability to wear a crucifix, rock-throwing, attempts by neighbors to convert them to Islam, and ostracism and Islamic teaching of the children in school). Although we affirmed the BIA's denial in that case based upon an adverse credibility determination, the IJ and the BIA had found persuasively in the alternative that "[Haddad] would nonetheless fail to prevail on the merits, as the incidents he alleged happened to him in Jordan because of his religion did not rise to the level of persecution, and did not establish that it is more likely than not that he will suffer persecution or torture if he returned to Jordan." *Id.* at *2. The Ninth Circuit has reviewed and denied a similar claim for asylum and withholding of removal by a Jordanian Christian family. *See Khoury v. Gonzales*, 180 F. App'x 681, 684 (9th Cir. 2006) (finding that "minor acts of vandalism and intimidation, such as throwing rocks, making threatening phone calls, and ransacking a dorm room, do not constitute persecution").

Additionally, although the 2006 State Department country report cited by the Helals does indicate that there is discrimination against Palestinians in Jordan and that non-Muslims may not proselytize Muslims, it also states that the Jordanian Constitution provides for free exercise of religion, that Christianity is a formally recognized—and thus protected—religion in Jordan, and that "[r]elations between Muslims and Christians generally [a]re amicable." While there is arguably a pattern and practice of persecuting Christians who converted from Islam, there is no evidence that the same persecution is inflicted on Christians born into the faith. Furthermore, the Helals' claim of a pattern of persecution is further undercut because much of Luai's family has continued to live in Jordan since the mid-1970s, and the Helals have offered no evidence to demonstrate that any of them have been physically harmed because of their religion. *See In re A-E-M*, 21 I. & N. Dec. 1157, 1161 (B.I.A. 1998).

Finally, federal appellate courts, including this one, have repeatedly addressed and rejected claims that Christians residing in the Middle East, without more individualized allegations of persecution, experience sufficient harassment and discrimination to make it more likely than not that they will suffer persecution if returned to the Middle East. *See, e.g.*, *Hanna v. Holder*, No. 08-4287, 2009 WL 1853460, at *2 (6th Cir. June 30, 2009) (collecting cases regarding the treatment of Iraqi Christians and concluding that "[w]e have repeatedly held that substantial evidence supports the conclusion that one's status as a Christian, without more, does not create a sufficiently particularized risk of persecution in Iraq"); *Gulezian v. Mukasey*, 290 F. App'x 888, 895–96 (6th Cir. 2008) (affirming a BIA determination that Christian residents of Egypt who alleged harassment and economic discrimination did not suffer past persecution and were not more likely than not to do so

-14-

in the future if returned); *Abusada*, 212 F. App'x 488, 493 (6th Cir. 2007) (holding that a Palestinian Christian petitioner's allegation of harassment and threats, the burning of his vehicle, and a beating by Hamas members "did not rise to the level of severity that courts have recognized as sufficient to establish past persecution" in Israel).

For these reasons, the scant evidence presented by the Helals in their applications and testimony does not compel us to conclude that the Helals would more likely than not be persecuted if removed to Jordan. Instead, the record presents substantial evidence to support the BIA's findings, and we therefore deny the Helals' petition to review this claim and affirm the BIA's determination that the Helals are ineligible for withholding of removal.

C.

To be eligible for protection under the CAT, an applicant must establish that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The applicant must establish a "particularized threat of torture, rather than any other form of persecution." *Castellano-Chacon*, 341 F.3d at 551–52. That threat of torture must be "inflicted, instigated, consented to, or acquiesced in, by state actors." *Id.* at 552. Unlike withholding of removal, however, the torture need not be on account of any protected ground. *Berri v. Gonzales*, 468 F.3d 390, 397 (6th Cir. 2006). "In deciding whether torture is more likely than not to occur . . . we 'consider the possibility of future torture, including any evidence of past torture inflicted upon the applicant and evidence that the applicant is not likely to be tortured in another area of the country of removal.'" *Id.* at 398 (citing *Ali*, 237 F.3d at 596–97).

The Helals' CAT claims were based upon the same grounds as their withholding of removal claims, namely that they fear torture because they are Palestinian Christians. Accordingly, for the same reasons that the Helals cannot establish that they would more likely than not be subjected to persecution upon removal to Jordan, the evidence does not compel the conclusion that they would more likely than not be subjected to torture. *See Berri*, 468 F.3d at 397 (explaining that because the petitioners based their CAT claim on the same grounds as their request for withholding of removal and such grounds failed to demonstrate that persecution is more likely than not, "they likewise fail to demonstrate that torture is more likely than not"). We therefore deny the Helals' petition to review the BIA's denial of their claim for protection under the CAT.

IV.

For the foregoing reasons, we DISMISS the Helals' petition for review insofar as it seeks review of the denial of their application for asylum, DENY the petition for review of the Helals' petitions for withholding of removal and protection under the CAT, and AFFIRM the decision of the BIA.