NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0339n.06

No. 19-4219

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LUAI NAJEEB HANNA HELAL;
AMANI NASEEM MICHAI HELAL;
IZIS LUAI NAJEEB HELAL; MAJD
LUAI NAJEEB HELAL; ZEID LUAI
NAJEEB HELAL,

   Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

   Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

 

**FILED**
Jul 15, 2021
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM
THE UNITED STATES BOARD OF
IMMIGRATION APPEALS

OPINION

---

**BEFORE:**  **GIBBONS, STRANCH, and BUSH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Petitioners, Luai Najeeb Hanna Helal (Mr. Helal),
his wife Amani Naseem Michai Helal (Mrs. Helal), and their children seek review of the denial by
the Board of Immigration Appeals of their motions to reopen removal proceedings. The Helals
applied for asylum and withholding of removal. The Immigration Judge (IJ) denied the application
and ordered the Helals removed from the United States to Jordan. A.R. 178, Summary Decision
of the Immigration Judge. The BIA dismissed the Helals' appeal and denied later motions to
remand based on changed country conditions and ineffective assistance of counsel. A.R. 101–03,
2008 BIA Decision; A.R. 3–7, 2019 BIA Decision. This petition for review followed. Because
the BIA did not abuse its discretion in denying the Helals' motions to reopen, we **DENY** the
Helals' petition for review.

## I. BACKGROUND

### A. Factual Background

The Helals are practicing Christians and citizens of Jordan. Mr. Helal entered the United States through Detroit, Michigan, in 2002 under a nonimmigrant business visa with authorization to remain for one month. Later in the year, his wife and children were admitted at Detroit as nonimmigrant visitors with authorization to remain in the United States for six months. More than six months later, the Department of Homeland Security served the family with a Notice to Appear charging them as removable under 8 U.S.C. § 1227(a)(1)(B) for remaining in the United States for longer than permitted.

Mr. and Mrs. Helal applied for asylum, listing each other and their children as derivatives on their applications, and also applied for withholding of removal under the Immigration and Nationality Act and under the regulations implementing the Convention Against Torture. In their applications and testimony, they alleged that their family would be persecuted in Jordan because of their Christian faith. *See Helal v. Holder*, 357 F. App'x 647, 649 (6th Cir. 2009).

### B. Procedural History

In September 2007, the IJ denied the Helals' applications for protection and relief and ordered the family removed to Jordan. The Helal family appealed the IJ's decision to the BIA. No separate applications for relief from removal were filed on behalf of Mr. and Mrs. Helal's then-minor children. In November 2008, the BIA dismissed the Helals' appeal, upholding the IJ's determinations that the asylum applications were untimely and that the Helals failed to demonstrate that they had experienced harm rising to the level of persecution or that they would be persecuted or tortured in Jordan if they returned. In December 2009, we denied a petition for review, affirming the decision of the BIA. *Helal*, 357 F. App'x at 655–56.

In September 2018, the Helals—through new counsel—filed motions to reopen based on changed country conditions. Their children also sought relief for ineffective assistance of counsel, arguing that their prior attorney should have filed individual applications for relief after the BIA dismissed their parents' appeal. In November 2019, the BIA denied the motions to reopen. The Helals filed a timely appeal.

## II. ANALYSIS

"The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board." 8 C.F.R. § 1003.2(a). Thus, we review the BIA's denial of a motion to reopen for an abuse of discretion. *Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006). "We find an abuse of discretion when the BIA's decision 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Dieng v. Barr*, 947 F.3d 956, 960–61 (6th Cir. 2020) (quoting *Alizoti v. Gonzales*, 477 F.3d 448, 453 (6th Cir. 2007)).

### A. Changed Country Conditions

Generally, a motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(C)(i); *accord* 8 C.F.R. § 1003.2(c)(2). However, the 90-day limitation is waived if the motion to reopen is "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii). Evidence of changed conditions "[must be] material and . . . not available and [could] not have been discovered or presented at the previous proceeding." *Id.*

The Helals contend that their motions to reopen are timely because conditions in Jordan changed after the BIA issued its underlying, final administrative order in 2008. In support of their motion to reopen, they submitted numerous exhibits detailing conditions in Jordan, including a 2017 U.S. State Department International Religious Freedom Report describing the potential

targeting of Muslim converts and increase in online hate speech directed towards religious minorities; a 2013 Report by the Pew Research Center touching on fraught interfaith relations; and a Reuters article concerning Jordanian honor killings and imprisonments. The Helals also provided several letters from friends and family detailing the potential harm the family faced if removed to Jordan. However, the Helals do not distinguish between conditions as alleged in 2007 and current conditions in Jordan.[1] Instead, the Helals assert that as family members of Muslim apostates, they are now members of a particular social group that may be subject to targeted violence without protection from Jordan's government. Mr. Helal's brother, Nael, married a Muslim woman, Raina, and in 1998 they moved from Jordan to Honduras where they have practiced Christianity and raised their children as Christians. The Helals contend that in June 2017, Rania's family found out that Nael and Rania are practicing Christianity rather than Islam and, as they cannot harm Nael and Rania in Honduras, they have threatened to harm Nael's family in Jordan, e.g., the Helals.

The BIA determined that the Helals' evidence did not show a material change in country conditions since their removal proceedings in 2007. According to the BIA, "to the extent converts from Islam to Christianity 'continued' to face harassment, discrimination, and family reprisal, and also honor killings exist in Jordan, these are essentially the same or similar conditions that existed at the time of [the Helals'] previous hearing." In making its determination, the BIA cited the 2017 Religious Freedom Report, which stated that "religious coverts . . . [and] [i]ndividuals in interfaith romantic relationships *continue*[] to report ostracism and in some cases, feuds among family members and violence toward the individuals involved." The BIA also explained that the Helals'

---

[1] The Reuters article notes that activists estimate that honor killings in 2016 were up 60% from the previous year; however, as the BIA noted, the evidence does not show whether such violence towards "members of the non-Muslim side of the family [would be] a proxy for 'honor killing.'"

recent evidence of changed conditions is similar to the evidence submitted in their first proceedings. For example, in making its initial determination in 2007, the IJ reviewed a U.S. State Department Report on Human Rights Practices in Jordan, which stated:

> The constitution provides for freedom to practice the rites of one's religion. . . .
>
> . . . .
>
> Muslims who convert to other faiths complained of social and government discrimination. Under Shari'a converts are regarded as apostates and legally may be denied their property and other rights.
>
> . . . .
>
> Converts from Islam to Christianity faced possible loss of civil rights, loss of child custody, and economic hardship. However, courts have shown a willingness to decide mixed religion child custody cases in the best interests of the child.
>
> . . . .
>
> Muslims who convert to other religions often faced social ostracism, threats, and abuse from their families and Muslim religious leaders. Families usually strongly discouraged interfaith romantic relationships. Such relationships may lead to ostracism and, in some cases, violence against the couple or feuds between members of the couple's families.

*See e.g.*, A.R. 460-461. Moreover, Nael and Rania have lived in Honduras and practiced Christianity since 1998, well before the previous denial in 2007. Although the Helals recently learned about the hostility directed toward their in-laws for the practice of their Christian faith, "a change in personal circumstances that is unaccompanied by a change in country conditions is insufficient to reopen proceedings." *Yu Yun Zhang v. Holder*, 702 F.3d 878, 879–80 (6th Cir. 2012) (citing *Bi Feng Liu v. Holder*, 560 F.3d 485, 492 (6th Cir. 2009)).[2] Evidence of potentially discriminatory and hostile conditions toward members of interfaith romantic relationships fails to

---

[2] While a change in personal circumstances alone does not constitute changed country conditions for purposes of 8 C.F.R. § 1003.2(c)(3)(ii), *Ba v. Barr*, 819 F. App'x 295, 304 n.7 (6th Cir. 2020) (citing *Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006)), "if the petitioner can demonstrate that a change in country conditions would lead to his persecution based on a corresponding change in his own personal circumstances, this is permissible," *id.* (citing *Chandra v. Holder*, 751 F.3d 1034, 1039 (9th Cir. 2014)); *see also Kamar v. Sessions*, 875 F.3d 811, 814 (6th Cir. 2017).

evince conditions materially different from when the Helals were denied asylum and withholding in 2007. *Luhiso v. Barr*, 787 F. App'x 319, 323 (6th Cir. 2019) ("A change in circumstance is attributable to a country's conditions if the country as a whole becomes more hostile or dangerous.").

Because the evidence presented to the BIA was not new or previously unavailable when the Helals initially filed their motion to reopen, the BIA did not abuse its discretion in denying the Helals' motion to reopen for failure to show changed country conditions. *See, e.g.*, *Liu*, 560 F.3d at 492 (upholding denial of a motion to reopen because the motion "demonstrated a change in [the petitioner's] personal circumstances but did not demonstrate changed country conditions in China").[3]

### B. Ineffective Assistance of Counsel

The BIA may consider an otherwise untimely motion to reopen on the merits by equitably tolling the statutory filing deadline. *See Barry v. Mukasey*, 524 F.3d 721, 724 (6th Cir. 2008). "Equitable tolling may apply when a petitioner has received ineffective assistance of counsel." *Ljucovic v. Gonzales*, 144 F. App'x 500, 503 (6th Cir. 2005); *see also, e.g.*, *Scorteanu v. I.N.S.*, 339 F.3d 407, 413 (6th Cir. 2003). However, we still require applicants to show that they acted with "due diligence in pursuing [their] rights." *Barry*, 524 F.3d at 724–25 (collecting cases). Specifically, they must "prove that the delay in filing the motion to reopen was due to 'an exceptional circumstance beyond [their] control.'" *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 423 (6th Cir. 2007) (quoting *Scorteanu*, 339 F.3d at 414). "While the length of the delay in filing a motion to reopen is an important part of this analysis, the mere passage of time does not

---

[3] We therefore need not address the argument that the BIA erred in finding that the Helals failed to establish their prima facie eligibility for asylum or withholding of removal. *Moran-Perez v. Whitaker*, 757 F. App'x 475, 478 (6th Cir. 2018) (citing *Chen v. Holder*, 397 F. App'x 111, 119 (6th Cir. 2010)).

necessarily imply a lack of due diligence." *Ly v. Holder*, 436 F. App'x 462, 465 (6th Cir. 2011) (citing *Gordillo v. Holder*, 640 F.3d 700, 705 (6th Cir. 2011)). Rather, the determination of due diligence depends on the specific facts of the case. *Id.*

The Helal children assert that their ineffective assistance of counsel claims are extraordinary circumstances entitling them to equitable tolling because they "filed timely after [they] realized that [their] prior counsel was ineffective[] [and] therefore ha[ve] acted in 'due diligence.'" It is undisputed that the Helals' motions to reopen their removal proceedings were untimely. As the BIA noted, "[o]n September 19, 2018, almost 10 years after the Board's order, the Helals filed their motion[s] to reopen," asserting ineffective assistance of counsel. Additionally, the Helals did not provide an explanation for such an extended delay or argue why this delay was out of their control. Although the Helal children were minors in 2008, when the BIA affirmed the IJ's decision denying their applications for asylum and withholding of removal— as well as when we denied review in 2009—the Helals "offer no real explanation" for why the delay continued after their adulthood.[4] *See, e.g.*, *Pepaj v. Holder*, 321 F. App'x 468, 472 (6th Cir. 2009) (declining to authorize equitable tolling where petitioners offered no real explanation for three-year delay in filing motion to reopen due to ineffective assistance of counsel).

Thus, the record of this case does not compel the conclusion that the BIA abused its discretion in denying the Helal children's motions to reopen.[5]

---

[4] Of note, the Helal children were granted Deferred Action for Childhood Arrivals (DACA) and have diligently maintained their status. In support of their claim of relief for ineffective assistance of counsel, the Helal family asserts that in light of *Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891 (2020), the children's DACA status may be at risk. The Supreme Court decided that case after the Helals filed their motions to reopen. The Court held that the Department of Homeland Security's decision to rescind DACA is reviewable under the Administrative Procedures Act and was arbitrary and capricious. *Id.* at 1907, 1910–15.

[5] "[T]he BIA may decline to equitably toll this period based solely on lack of due diligence, and because we find that the BIA did not abuse its discretion in determining that [the Helal children] had not exercised due diligence, we need not address the *Lozada* requirements or whether [they] ha[ve] established prejudice." *Ly*, 436 F. App'x at 466 (citing *Barry*, 524 F.3d at 724).

**III.    CONCLUSION**

The BIA's decision was not rendered without a rational explanation, it did not inexplicably depart from established policies, nor did it rest on an impermissible basis.  Accordingly, we **DENY** the Helals' petitions for review.